## Louisville Railway Co. v. Wilder.

(Decided May 2, 1911.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Street railways—Duty of as Carrier of Passengers—It is the duty of the persons in charge of street cars at all times and places and under all circumstances to exercise towards every passenger getting on, alighting from, or riding in a car the highest degree of care which prudent persons engaged in the operation of cars exercise for the safety of passengers.

2. Measure of Care Differs in its Application—What would be sufficient care as to one person might not be sufficient as to another. The strong and active do not need the same degree of care as do children, or feeble, infirm or aged persons, or persons who are encumbered with babies or bundles; but, to each class considering the age, health and the conditions attending him, the same high degree of care is to be used.

3. Duty of Operators of Cars—It might be due care as to one to start the car when he was on the platform, as to another when he had entered the car door, while as to another it would be negligence to start before he had reasonable opportunity to be seated.

4. Duty of Operators of Cars—The operators of cars must exercise the highest degree of care to discover the situation and condition of passengers so that they may be in a position to exercise towards each the degree of care his situation and condition demands.

ALFRED SELLIGMAN, FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This appeal is prosecuted from a judgment in favor of the appellee, and a reversal is asked upon the ground that the evidence offered in her behalf did not support the averments of the petition, and for alleged error in giving and refusing instructions.

The petition, as amended, averred that while one of appellant's cars was standing motionless for the purpose of permitting passengers to get on, appellee who was carrying an infant child in her arms got on the platform

of the car for the purpose of going in the car, and taking a seat, and before she was safely in the car it was by the negligence of the persons in charge of the car started with a "reckless or unnecessary and unusual jerk or lurch," causing her to be thrown against the side of the door-way and seats of the car, bruising and injuring her severely.

Appellee testified in substance that when the car stopped, she got on the platform and was in the act of entering the door of the car with her baby in her arms when the car suddenly started forward and threw her against the door and afterwards against one of the seats. But there was no evidence in her behalf that the car was started in a reckless manner or with an unusual or unnecessary jerk or lurch. Witnesses for the appellant testified that the car was started in the usual manner and that there was no violent, or unnecessary or unusual jerk or lurch, and that appellee was not carrying her child when she fell but that the child was in the aisle of the car ahead of her and she was caused to fall by the fact that in passing from the platform into the body of the car he stepped upon her dress, tripped and fell. We may, therefore, say that under the evidence, the case for the appellee must rest upon the ground that the operators of the car were negligent in starting it before she had opportunity to get to a seat or be seated. The negligence, if any, consisted not in the manner in which the car was started, but in the fact that it started before appellee, who had her baby in her arms, had opportunity to get inside the car and to a seat.

With the evidence in the condition stated, the court in instruction No. 2 told the jury that:

"If they believed from the evidence that on the occasion mentioned the train was started suddenly, with a reckless or unusual jerk or lurch, and that the plaintiff was thereby thrown down and was injured thereby, or if the jury believe from the evidence that when the plaintiff got upon the platform of the car and was about to enter the car she was carrying her child in her arms, and that by reason of such fact, if it was a fact, she required more than usual care, and that her situation, if such it was, was, or by the exercise of the highest degree of care upon their part would have been, reasonably apparent to the defendant's agents or any of them in charge of the car, and that such agents started the car before the plaintiff was seated in the car, and that the plaintiff was

thereby thrown down and was injured thereby, then the law is for the plaintiff and the jury should so find.''

In another instruction the ''highest degree of care'' was thus defined as:

''The highest degree of care which prudent persons engaged in the operation of cars propelled by electric power exercise for the safety of passengers under similar circumstances to those under investigation in this case.''

Under the instruction the jury was authorized to find a verdict for the appellee if they believed from the evidence that the car was started with a reckless or unusual jerk or lurch, or, if they believed that appellee's condition or situation was such as to impose upon the operators of the car the duty of exercising unusual care for her safety. So much of this instruction as authorized the jury to find for the appellee if the car was started with ''a reckless or unusual jerk or lurch'' should not have been given, as there was no evidence whatever upon which to submit this theory of the case to the jury.

Another objection to the instruction is that it allowed a recovery if the jury believed that the appellee in entering the car with her child in her arm ''required more than usual care, and that her situation, if such it was, was or by the exercise of the highest degree of care upon their part would have been, reasonably apparent to the defendant's agents or any of them in charge of the car, and that such agents started the car before the appellee was seated in the car and that the plaintiff was thereby thrown down and was injured thereby.'' Under this instruction the jury were in substance and effect told that if the situation of appellee imposed upon the persons in charge of the car the duty of exercising more than usual care, appellee was entitled to recover if they started the car before she was seated, thus, putting upon the company as a matter of law a higher duty and degree of care than should have been imposed. If the situation or condition of appellee required more than usual care on the part of the agents in charge of the car in starting it, and her situation and condition was reasonably apparent to them, then it was their duty before starting the car to have allowed appellee a reasonable opportunity to get seated. Or, to put it in another way, it was for the jury to say (1) whether appellee's condition was such as to require the operators of the car to exercise more than

usual care, (2) whether by the exercise of the highest degree of care her condition or situation could have been discovered by or was reasonably apparent to the operators of the car, (3) whether they failed to allow her reasonable opportunity to take a seat in the car before starting it. To entitle appellee to recover it was necessary that all three of these conditions should exist and it was for the jury to say under proper instructions whether they existed or not. It was as much the province of the jury to pass upon one of these questions of fact as the other, and the existence of each of them was necessary to make out a case for appellee. The operators were not required as a matter of law to hold the car motionless until appellee was seated. They were only required to hold it motionless until she had a reasonable opportunity to be seated. Although the jury might have believed that her situation was known to the operators of the car, and that it demanded unusual care upon their part, yet, if they allowed her reasonable time and opportunity to take a seat before starting the car, and she failed to avail herself of the time and opportunity so allowed, the company would not be liable. The view we have of the law of the case was incorporated in an instruction offered by counsel for appellee, but not submitted in which the jury were told that:

"* * * After getting upon the platform of the car, the plaintiff with her child still in her arms, attempted to enter the door of the car, and if the jury shall believe from the evidence that under these circumstances, the exercise of the highest degree of care for the plaintiff's safety required that the defendant's agents in charge of the car and controlling its movement should have allowed her a reasonable opportunity to take a seat in the car before starting it in motion, and if the jury shall believe from the evidence that the car was started in motion while the plaintiff was entering it, carrying her child in her arms, and that she was thereby caused to fall and so sustain the injuries of which she complains, they should find for the plaintiff."

It has been settled in numerous cases that a passenger who is injured by the starting of a car, unless there are special circumstances that take him out of the general rule, can not recover unless the car is started in a violent, unusual or reckless manner; or, in other words, started with more than the usual jerk or lurch

that attends the starting of cars. Passengers who get on street cars must know that when they start there will of necessity be a sudden slight jerk or lurch accompanying the forward movement, and they must take the risk of being thrown out of balance by this movement. But it is also well settled that it is the duty of the persons in charge of street cars at all times and places and under all circumstances to exercise towards every passenger getting on, alighting from, or riding in a car, the highest degree of care which prudent persons engaged in the operation of cars exercise for the safety of passengers. But this degree of care is not in its application to all persons always the same. What would be sufficient care as to one person might not be sufficient as to another. The strong and active do not need the same degree of care to save them from injury as do children, or feeble, infirm or aged persons, or persons who are encumbered with babies or bundles. It might be due care as to one to start the car when he had gotten on the platform, and to another when he entered the car door, while as to another it would be negligence to start before he had reasonable opportunity to be seated. But all these classes of persons have the right to use the car, and to each considering his age, health and the conditions attending him the same high degree of care is due, and it is encumbent upon the operators of cars to exercise this high degree of care to discover the situation and condition of passengers so that they may be in a position to exercise towards each the degree of care his situation and condition demands. Bennett v. Louisville Ry. Co., 122 Ky., 59, 4 L. R. A., N. S., 558; L. & N. R. Co. v. Hale, 102 Ky., 600, 42 L. R. A., 293; Yarnell v. Kansas City, Fort Scott & Memphis R. Co., 18 L. R. A., 599; Steeg v. St. Paul City Ry. Co., 16 L. R. A., 379; Shearman & Redfield on Negligence, section 508.

That the condition of appellee was such as to authorize the court to leave it to the jury to say whether she should have been allowed an opportunity to be seated before the car was started, we have no doubt. But, for the error pointed out in the instructions the judgment must be reversed with directions for a new trial in conformity with this opinion; and it is so ordered.