## Illinois Central Railroad Co. v. Dallas' Admx.

(Decided November 7, 1912.)

### Appeal from Graves Circuit Court.

1. Railroads—Passengers—Death—Action for Damages—Verdict—Sufficiency of Evidence.—In an action to recover damages for the negligent death of a passenger, evidence examined and held sufficient to sustain a verdict in favor of plaintiff.
2. Railroads—Instructions.—An instruction which submits to the jury both the law and the facts is erroneous.

ROBBINS & THOMAS; TRABUE, DOOLAN & COX; E. W. SPRAGUE, R. G. ROBBINS, C. L. SILVEY and EDWARD C. CRAIG for appellant.

W. J. WEBB for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This is an action by T. R. Dallas' administratrix to recover damages for his death, alleged to have been occasioned by the negligence of the Illinois Central Railroad Company. On the first trial the court directed a verdict in favor of the railroad. On appeal here, it was held that there was sufficient evidence to justify the submission of the case to the jury. Dallas' Admx. v. I. C. R. R. Co., 144 Ky., 737. The second trial resulted in a verdict and judgment for plaintiff in the sum of $2,000. The railroad company appeals.

Upon the second trial, the evidence for plaintiff was substantially the same as that upon the first trial, and may be found in the opinion on the former appeal. For the purpose of a correct understanding of the case, it may be well to repeat that according to plaintiff's evidence, Dallas and his companion, L. J. Turnbow, aged 16 and 18 years, respectively, were working on a farm near Arcola, Illinois. On the occasion of Dallas' death, they boarded the train at Arcola, about 9:30 p. m., reaching Mattoon, Illinois, shortly after 10 o'clock. The boys occupied a seat on the west side, near the center of the ladies' coach, which was a vestibule car. Dallas was not familiar with Mattoon or its surroundings. As the train approached Mattoon the brakeman or porter came to the door of the car, called out Mattoon, and passed through the car, leaving the door open. The train be-

gan to slacken speed, and Dallas arose from the seat and
started toward the front of the car. About the time
Dallas reached the front door, the train came to a stop.
Turnbow in the meantime had started for the door. The
train made a sudden start, and threw him against the
end of the seat. In the meantime, Dallas had gotten to
the door, and was probably at the door or on the plat-
form at the time the train started. Turnbow saw no
more of Dallas. Dallas' body was afterwards found
upon the track by one of the railroad employes. One
of his arms had been cut off and his skull crushed.

According to the evidence of the railroad company,
its line of railway from the city of Mattoon runs nearly
north and south. The New York Central railroad runs
almost east and west. The junction of these two roads
is north of the Illinois Central station. The first street
that crosses the Illinois Central railroad north of the
junction of the two roads is Richmond avenue, which is
about 600 feet from the junction. Just north of Rich-
mond avenue, and about 300 feet from it, is Champagne
avenue. The next street north of Champagne avenue is
Shelby street, which is about 300 feet from Champagne
avenue. These streets are all about 100 feet wide. The
body of Dallas was found about midway between Cham-
pagne avenue and Shelby street, or about 1,200 feet
north of the junction of the two railroads. The train
consisted of an engine, tender and seven cars, and was
between 550 and 600 feet long. The usual stopping
place for the junction was about 20 or 30 feet north of
the New York Central railroad. The conductor and the
porter on the train in question both testify that they
were each at the place where Turnbow says that decedent
went out of the car; that the door was not opened for
the exit of passengers until after the train stopped at the
depot, which is south of the New York Central. They
further testify that no person whatever came out of the
coach just before, or at any time previous to, the stop-
ping of the train for the junction. When the train
landed at the depot, some passengers did leave it. In
addition to this testimony, the defendant introduced
their special agent, Frank McKenzie. At the time of
the passing of the train, he was inspecting it for the
purpose of seeing whether or not there were any per-
sons riding the blind baggage. Upon the occasion in
question, he claims to have stationed himself near the
tracks on Richmond avenue. He says that when the

train stopped at the junction, the rear coach was in the middle of Richmond avenue. There were two coaches behind the one upon which it is claimed that decedent was riding. McKenzie saw no one in any of the vestibules when the train passed over Richmond avenue. No one alighted or attempted to alight from the train when it stopped for the junction. In addition to the foregoing evidence, the porter, Bell, claims that when the train, stopped at Arcola, he saw a couple of young men rushing towards the rear end of the train on the east side. At the time he saw them, they were running away from him, and he does not know what became of them. The conductor says that he noticed a young fellow running north towards the rear end of the train, and then turn west. He also heard him running south on the west side of the train; that there was no vestibule on the baggage car.

For the railroad company it is earnestly insisted that the verdict is flagrantly against the evidence. In this connection it is insisted that the evidence of three witnesses shows conclusively that the train did not stop until just before it reached the junction, while Dallas' body was found about 1,200 feet from the junction, and as the vestibule doors were closed, it was impossible for Dallas to have gotten off. The fact remians, however, that Dallas' body was found about 1,200 feet from the junction, and that he was most probably a passenger on the car. The only positive evidence on the question is, to the effect that he was. The vestibule doors must have been open in order for him to get off the train. While, the numerical weight of the testimony upon the question where the train stopped is in favor of the defendant, yet we cannot say that the verdict of the jury is flagrantly against the evidence.

Omitting the instructions on the measure of damages and contributory negligence, and the instruction defining ordinary care, the court instructed the jury as follows:

"1. If you shall believe from the evidence in this case that at the time and on the occasion complained of by the plaintiff, the decedent, T. R. Dallas, had purchased a ticket over defendant's road from Arcola, Illinois, to Mattoon, Illinois, and had taken passage on one of its passenger trains, and his ticket had been accepted and received by the conductor, then the court instructs you that he was a passenger on said train and that it became and was the duty of the defendant's agents and em-

ployes in charge of said train to exercise the highest or utmost care which reasonably careful and prudent persons engaged in a like business or the doing of a like thing under like or similar circumstances of this case to safely carry plaintiff as a passenger to his place of destination and to allow him to safely alight from said train, and if you shall believe from the evidence in this case that the defendant's agents and employes in charge of said train failed to exercise such care, and by reason of such failure, and as a direct and proximate result of said failure, decedent was caused to receive and did receive the injuries complained of, which resulted in his death, then the defendant is chargeable with negligence in this case, and the law is for the plaintiff and you will so find.''

''But unless you shall believe from the evidence in this case that the defendant's employes in charge of said train have been proven guilty of negligence as defined to you by instruction No. 1, then the law is for the defendant and you will so find.''

It will be observed that the foregoing instruction, after submitting the question whether or not Dallas was a passenger, defines the highest or utmost care, and submits to the jury the abstract question whether or not on the occasion in question the railroad company failed to exercise such care to safely carry Dallas as a passenger to the place of destination, and to allow him to safely alight from the train, and whether or not, by reason of such failure, if any, and as a direct and proximate result thereof, Dallas received the injuries which resulted in his death. This form of an instruction has been frequently condemned by this court. It is so general and abstract in form as to make the jury the judges of both the law and the facts. L. & N. R. R. Co. v. King, 131 Ky., 351; Smith v. Cornett, 38 S. W., 689, 18 Ky. L. Rep., 818; C., N. O. & T. P. Ry. Co. v. Hill's Admr., 89 S. W., 523, 28 Ky. L. Rep., 530; L. & N. R. R. Co. v. Crutcher, 135 Ky., 381; Western Ky. Coal Co. v. Davis, 138 Ky., 669; Citizens Trust & Guaranty Co. v. Ohio Valley Tie Co., 138 Ky., 421; Johnson, et al. v. Westerfield's Admr., 143 Ky., 10. It is the duty of the courts to predicate their instructions upon the facts which the evidence tends to establish, and tell the jury that if they believe from the evidence that the facts are so and so, then the law is so and so. In the present case, the jury may have concluded that the mere anouncement of the

station or the opening of the door before the train stopped was a failure to exercise the highest degree of care. Therefore, we are of the opinion that the instruction should have told the jury what facts were necessary to constitute a failure to exercise the highest degree of care, instead of leaving them to speculate on the question, and apply their own particular views, which might or might not be correct. The defendant not only objected to the instruction in question, but offered two or three instructions, predicated on whether or not there was an invitation to alight, and whether or not decedent was thrown from the train by a sudden, unusual and unnecessary jerk. While these instructions may not have been correct, it was the duty of the court to prepare, or direct the preparation of, proper instructions on points intended to be covered by the instructions offered. L. & N. R. R. Co. v. Harrod, 115 Ky., 877, 75 S. W., 233, 25 Ky. Law Rep., 250; Nicola Bros. v. Hurst, 88 S. W., 1081; 28 R., 87; Western Ky. Coal Co. v. Davis, 138 Ky., 673. We conclude that the giving of instruction No. 1, together with the refusal of the court to properly present to the jury the defendant's side of the case, constituted an error which, under the facts of this case, was prejudicial to the substantial rights of the defendant.

On another trial, if the evidence be substantially the same, the court, in lieu of the instructions given on the second trial, will instruct the jury as follows:

1. If you believe from the evidence that on the occasion in question the plaintiff's intestate, Dallas, had purchased a ticket over defendant's road from Arcola to Mattoon, Illinois, and had taken a seat in one of the coaches for the purpose of riding to Mattoon, then he was a passenger on the train, and it was the duty of the defendant's agents in charge of the train to exercise the highest degree of care which prudent persons engaged in a like business usually exercise, to carry him safely as a passenger to his destination, and to allow him to alight safely from the train. The failure to exercise said care was negligence on their part.

2. If you believe from the evidence that Dallas was a passenger on the train, as set out in No. 1, and that as the train drew into the city of Mattoon, the brakeman announced the station, and after announcing the station, opened and left open the door of the car, and the train began to slacken its speed, and that thereupon Dallas arose from his seat preparatory to getting off the train,

and went to the door of the car, and while he was there and the train was running at a very slow rate of speed, the train was negligently caused to make an unusual, unnecessary and sudden jerk forward, with such force that Dallas was thrown or knocked from the platform and caused to fall from the train while exercising ordinary care for his own safety as set out in No. 4, you will find for the plaintiff.

3. If you believe from the evidence that Dallas was a passenger on the train, and that the brakeman called the station and opened the door of the car, and after this the train came to a stop and started up again without going a reasonable time for Dallas to alight, and he was thus thrown from the train and killed, you should find for the plaintiff.

4. It was incumbent upon the decedent to exercise such care for his own safety as might be reasonably expected of a person of ordinary prudence situated as he was, and if you believe from the evidence that he failed to do this, and but for such want of care on his part he would not have been injured, you should find for the defendant.

5. The calling of the station by the brakeman, and the opening of the door of the car was an invitation to the passengers to get ready to alight, but was an invitation to alight only after the train had stopped, and if you believe from the evidence that the decedent was not knocked or thrown from the car by a negligent and unnecessary jerk of the train, as set out in No. 2, but voluntarily attempted to get off the train before it stopped, and was thus injured, or if he was not a passenger on the car, as set out in No. 1, you should find for the defendant.

6. If you find for the plaintiff, you will award her such sum in damages as you may believe from the evidence will fairly and reasonably compensate the estate of said decedent for the destruction if any, of his power to earn money, not exceeding, however, the sum of $2,000, the amount claimed in the petition.

Judgment reversed and cause remanded for new trial consistent with this opinion.