## Central Kentucky Traction Company v. Smedley, By, et al.

(Decided November 15, 1912.)

### Appeal from Woodford Circuit Court.

1. Master and Servant—Interurban Railroads—Infant—Personal Injury—Action for Damages—Instructions—Prejudicial Error.— Where plaintiff, an infant 17 years of age, was engaged in loading and unloading stone, and was required to ride on a motor car from the quarry to the place where the stone was distributed, and while riding, fell or stepped from the car and was injured, it was error to submit the case to the jury on the question of the dangerous or defective condition of the car, in the absence of evidence showing that the car was dangerous or defective.

2. Same.—Where an infant 17 years of age knows and fully appreciates the dangers connected with his employment, a failure to warn him of such dangers is not negligence, and it is error to submit the question to the jury.

3. Same—Fellow Servant.—An employe of an interurban railroad company who was engaged in loading and unloading crushed stone, and who was required to ride from the place where the stone was loaded to the place where it was to be distributed, is not a fellow servant of the motorman who operated the car, and he may recover for the negligence of the motorman, whether ordinary or gross.

4. Same—Volunteer.—An employe of an interurban company who was engaged in loading and unloading crushed stone, and who was required to ride from the quarry on the motor car used to propel the freight car to the point where the stone was to be distributed, and who was injured while going from the front of the car on the running board to the rear of the car, where he could be better protected from the inclement weather, will not be treated as a mere volunteer, and therefore not entitled to recover for negligence of defendant's motorman, on the ground that at the time he was injured he was not engaged in the performance of any duty owing to the master.

5. Same—Infant—Assumption of Risk.—While an infant employe 17 years of age and of fair intelligence, knowing that the car on which he was riding would jerk, and who was capable of appreciating the danger therefrom, assumes the risk of such jerks as ordinarily and usually attend the prudent operation of a car similar to the one on which he was riding, yet, if the motorman negligently gave the car a jerk that was unusual and unnecessary, and so violent as to show a want of ordinary care on the part of the motorman for the safety of those riding on the car, and the infant employe was thereby injured, he may recover.

WALLACE & HARRIS, JOHN R. ALLEN and STOLL & BUSH for appellant.

H. A. SCHOBERTH, D. T. EDWARDS and D. L. THORNTON for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Plaintiff, George W. Smedley, suing by his next friend, W. M. Smedley, brought this action against the Central Kentucky Traction Company to recover damages for personal injuries alleged to have resulted from defendant's negligence. From a verdict and judgment in favor of plaintiff for $5,000, the defendant appeals.

At the time of the accident, defendant was engaged in ballasting its tracks with crushed stone. The stone was being quarried and crushed on the farm of H. H. Jesse, a few miles east of Versailles, in Woodford County, and was being hauled from there over the defendant's line to the place of distribution. It was the duty of the employes engaged in this work to load the stone on the cars, and then ride on the cars to the point of distribution, and there unload the stone. Plaintiff, who at the time was 17 years of age, 5 feet 11 inches high, and weighed 150 pounds, was employed a few days before the accident to assist in this work. In carrying the ballast, the defendant used two cars. One was a small freight car, without motive power. The stone was loaded on this car, and it was not used for any other purpose. Attached to the freight car was a summer passenger car, with trolley and other electrical appliances necessary for motive power. The motor car was an open car, such as is used in cities during the spring, summer and fall. Its seats ran at right angles to the sides of the car. On each side of the car there was a running board 18 inches to two feet wide, reaching from the front to the rear. This running board was used for the purpose of getting on and off the car, and for passing from one end of the car to the other. At each end of the seats there was an upright post. Fastened to each of these upright posts was a hand hold. The freight car and the motor car were coupled together by a link and pin. The link was a solid bar of iron, with a round hole in the end.

The accident happened on the night of November 8, 1907. Plaintiff and those working with him had loaded the box car, and the box car was being pulled by the motor car to the point where the stone was to be distributed. As the two cars approached the point on the Versailles pike where the Louisville & Atlantic Railroad

crosses, some one suggested to plaintiff that it was his time to turn the derail. Plaintiff claims that he had never had any experience in doing this, and walked to the front of the passenger car to see how it was done. After the derail was turned, the cars crossed the railroad track, and proceeded towards Versailles. Just east of Versailles there is a hill. When the car reached this hill, and was moving at a speed of three or four miles an hour, plaintiff, who was cold, concluded to return to the rear end of the car, where he would be better protected. The car itself was not enclosed, and there were windows in front and in the rear. Some of the windows in front had been broken, but the windows in the rear were all right. The employes were accustomed to ride on the rear seat. The only way to reach the rear end of the motor car was to step over the seats or to pass along the running board. As plaintiff was passing along the running board, he says there was a snatch of the car which threw him to the ground and under the car. His foot was caught under the wheels, and so badly crushed that amputation was necessary. Plaintiff says that while he knew the car would jerk, and did sometimes jerk, he had never seen a jerk as hard as the one that threw him from the car. Henry White, a witness for the plaintiff, says that there was first a jerk and then a jar. When he felt the jerk he thought the car had jerked loose behind. The jerk occurred before the jar. He had never felt it snatch that way before going up that hill.

According to the evidence for defendant, there was no jerk of the cars at all. There was simply a jar caused by the car running over plaintiff's leg. The motorman in charge of the car does not remember whether plaintiff was on the front of the car or not. He says that immediately after the accident plaintiff stated that he was aiming to get off the car and walk up the hill for the purpose of getting warm. Dr. Blackburn, who attended the plaintiff, testifies that the plaintiff said that he was sitting on the front end of the car, and the rest of the workmen were on the back seat; his feet got cold and he started back to where they were. As he went along the running board, he was stamping his feet on the running board to get them warm, when one of his feet slipped off. One witness for the defendant says that he saw plaintiff starting from the front of the car to the rear on the run-

ning board. Plaintiff attempted to get off with his back in the direction the car was going. In doing this he was thrown to the ground and injured.

In his petition, plaintiff alleged that he was thrown from the car and injured "by the carelessness and negligence of the defendant and its agents and employes superior in authority to the plaintiff." Defendant denied the allegations of the petition and pleaded contributory negligence. Later on plaintiff filed an amended petition, pleading his infancy and inexperience, and the failure on the part of defendant to warn him of the dangers incident to his employment; also that the place where he was required to work, and the cars, machinery and appliances furnished by the defendant were unsafe and dangerous, all of which the defendant knew, or by the exercise of ordinary care could have known. The amended petition, however, failed to allege that plaintiff's injuries were caused by any failure of duty on the part of defendant, in either of these respects.

The court gave to the jury five instructions. The first instruction told the jury that if they believed from the evidence that the motor car furnished by defendant, upon which the plaintiff was traveling at the time he was injured was insufficient or ineffective for the purpose of drawing loaded rock cars, of weight equal to the one in use upon that occasion, or for the purpose of carrying defendant's employes; and for either reason was dangerous or unsafe for the purpose of transporting plaintiff from place to place in the discharge of his duty, and same was unknown to plaintiff, but defendant knew that fact, if it was a fact, or, by the exercise or ordinary care and prudence could have known same, and failed to notify or warn the plaintiff of such danger, if any, and plaintiff was thereby injured, while using ordinary care for his own safety, then the jury should find for the plaintiff, but unless they so believed, they should find for the defendant.

By instruction No. 2, the court defined ordinary care and negligence as applicable to a boy 17 years of age. Instruction No. 3 defines the measure of damages. Instruction No. 4 covers the question of assumption of risk. Instruction No. 5 presented the question of contributory negligence.

The defendant insists that the court erred in submitting the case to the jury on the question of the danger-

ous condition of the car, and the failure to warn. Plaintiff and his witnesses did not testify to any facts tending to show that the car was dangerous or insufficient for the purpose for which it was intended. The effect of their evidence is that it was an old summer passenger car. It was open on both sides. It was not heated in any way, and one or two glasses were out of the window in front. The seats ran crossways of the car. The only way to get from the front of the car to the rear was along the running board. The car was light. Nor did the cross-examination of defendant's witnesses elicit any facts tending to show that the car was insufficient for the purpose for which it was used, or that any part of the appliance was defective. The running board was all right. The hand holds were in proper condition. Plaintiff was not thrown from the car because the night was cold and the car was not heated. No doubt on account of these conditions he attempted to go from the front of the car to the rear, but these conditions did not cause his injury. Nor can we see any reason why plaintiff should have been warned as to the dangers attending his work. He had no work to perform in connection with the operation of the car. He was not required to come in contact with any machinery of any kind. If he wanted to move from one end of the car to the other, all he had to do was to walk along the running board and hold to the hand holds. He testifies that he knew the car would jerk, and had felt it jerk before. The evidence shows that while only 17 years of age, he was a boy of fair intelligence. Knowing the car would jerk, he also knew that while walking along the running board the jerk of the car would have a tendency to throw him off. The evidence leaves no doubt that he was fully capable of appreciating this danger. That being true, he assumed the risk of such jars and jerks as were ordinarily and usually incident to the prudent operation of the car, and it was not necessary to warn him of a danger which he knew and fully appreciated. C., N. O. & T. P. Ry. Co. v. Finnell's Admr., 108 Ky., 135; Knight v. Paducah B. & B. Co., 31 R., 629; Kelly, &c. v. Barber Asphalt Co., 93 Ky., 363. We, therefore, conclude that the court erred in submitting the case on the propositions set out in instruction No. 1.

There was evidence however, tending to show that plaintiff was injured by an unusual and unnecessary jerk

of the car. Doubtless this phase of the case was not presented to the jury, because plaintiff, after alleging negligence in general terms, specified the negligence on which he relied and the trial court was of the opinion that he was confined to a recovery for the negligence specified. On a return of the case, plaintiff will be permitted to amend his petition.

We are not inclined to hold that because plaintiff, at the time he was injured, was not actually engaged in performing some active service for defendant, he is to be treated as a mere volunteer, and, therefore, not entitled to recover. It was a part of his duty to ride on the car from the quarry to the place where the stone was to be distributed. Being on the front of the car, we think he had the right to walk along the running board provided for that purpose in order to get to the rear end of the car, especially in view of the fact that the night was cold, and he could be better protected from the inclement weather at the rear end of the car. In doing this, however, it was his duty to exercise ordinary care for his own safety, and the fact that he was so engaged did not relieve the defendant from liability for a failure to use ordinary care in the operation of the car. While, of course, he assumed the risks and hazards arising from the jars and jerks that are usually and ordinarily incident to the prudent operation of cars similar to the one on which he was riding, yet if the motorman negligently gave the car a jerk which was unusual, unnecessary, and so violent as to show a want of ordinary care on his part for the safety of those riding in the car, and by reason of this plaintiff, while exercising ordinary care for his own safety, was thrown from the car and injured, he is entitled to recover. On the other hand, if plaintiff attempted to alight from the car while the car was in motion, and was thereby injured, or was engaged in jumping up and down on the running board and his foot slipped, and he was thereby thrown to the ground and injured, he is not entitled to recover.

It is not necessary to allege or show gross negligence on the part of the motorman in order to authorize a recovery by plaintiff. The accident did not happen at the crusher or at the point of distribution, where plaintiff worked under the motorman's direction or control. In riding on the car to the place of destination, plaintiff had no duties to perform in connection with the opera-

tion of the car. While so riding, he was not engaged in the same department of the same work with the motorman. Their duties did not require immediate co-operation, and did not bring them together or into such relation that they could exercise influence upon each other promotive of proper caution. Louisville Ry. Co. v. Martin Hibbitt, 139 Ky., 43; Milton's Admx. v. Frankfort & Versailles Traction Co., 139 Ky., 53. In the case of L. & N. R. R. Co. v. Brown, 127 Ky., 732, the court said:

"But when the servant is injured by employes of the same master, who are not directly associated with him, and with whom he is not immediately employed and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negligence and carelessness he cannot protect himself, he may recover damages from the master for injuries received through their negligence, whether it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds."

Applying the above rule, we conclude that plaintiff was not a fellow servant of the motorman, and that he may recover for the motorman's negligence, whether it be ordinary or gross.

Judgment reversed and cause remanded for new trial consistent with this opinion.