## Lunsford v. Louisville & Nashville Railroad Company.

(Decided April 18, 1913.)

### Appeal from Estill Circuit Court.

Railroads—Injury to Passenger From Being Thrown From Platform of Train—When No Recovery Can Be Had—Negligence.—A passenger on a railroad train who goes out upon the platform before the train stops, and while standing there is thrown from the train by a jerk of the cars in stopping, cannot recover for his injuries in the absence of some evidence showing negligence in

the management of the train. The evidence may be circumstantial but there can be no recovery in the absence of facts showing that the jerk of the cars was unusual and more violent than is fairly incidental to the operation of the train with proper care.

R. W. SMITH, KELLY KASH for appellant.

BENJAMIN D. WARFIELD, WALLACE & HARRISS and RIDDELL & FRIEND for appellee.

Opinion of the Court by Chief Justice Hobson—Affirming.

Millard L. Lunsford boarded the train of the Louisville & Nashville Railroad Company at Berea, Kentucky, intending to go to Wagers in Estill County, which is a station beyond Irvine, the county seat. For some reason he bought a ticket only to Irvine. After the train left Irvine the conductor came to him for his fare. He then told the conductor that he wanted to get off at Wagers. The train had passed Wagers, and the conductor told him that he would put him off at Millers Creek, which was the next station. As the train was pulling into Millers Creek, he went upon the platform, and while standing there was thrown from the train, sustaining a painful injury, to recover for which he brought this suit against the company. On a trial of the case before a jury the circuit court instructed the jury peremptorily at the conclusion of the evidence for him to find for the defendant, and his petition having been dismissed, he appeals.

The accident occurred at night; it was the second time that Lunsford had ever been on a train, and so far as appears he was the only person in the car as it approached Millers Creek. He was the only witness introduced as to how the accident·occurred. His testimony, put in narrative form, is as follows:

"I got my ticket at Berea to come to Irvine, and when I come to Irvine, why, I just held my seat, thinking the conductor would come and say something about it. I wanted to go to Wagers; I had a daughter that lived there and I started to see her. I did not know that this station was a flag station; if I had, I would have mentioned where I wanted to stop; and then after we passed Irvine the conductor came back to me and asked for a ticket and I told him that I wanted to get off at Wagers. Why, he says, you have passed Wagers Station, there is no other station for you to get off only at Millers Creek.

So I went on down here to Millers Creek, and when they blowed the whistle for the station, and the door was opened, crying the station, I suppose it was the conductor, looked like the same man that took the money from me, that I gave the money to. The door was open just like they generally do when passing through and calling stations. I thought the train was going to stop, and I got up, * * * set there until it stopped, you know, * * * and I got up and walked out on the platform, why it were not stopped; I stood there waiting, and then with a chug and a sudden jerk, I was standing holding to the handle rail, and it pitched me off. It was just the coaches pitching up together, a sudden jerk. I fell in a mud hole when I first struck the ground on my right shoulder, and knocked my shoulder out of place when I struck the ground. I left my seat because it was near the station, and they had called the station. I never had been on a train in the night; it was in the night, you know, and I couldn't see out was one reason. I was to stop at the station and when they called it out and the train began to slow up, I thought I was there. I didn't know which side of the railroad the station was located; never been there before."

On cross-examination he said:

"The man hollered Millers Creek two or three times as he walked through the train, said nothing more. The door was not open until the man opened it."

He was standing on the top step when he was thrown off. The train ran some little bit after he got out there before it made the sudden jerk. On re-examination he said:

"When I got up from my seat I did not exactly know the train was moving: if I had I would have stopped when I got up. The train made a chug, a chug with a coach and kind of a jerk pitched me off."

None of the train men, so far as the proof shows, saw him on the platform or knew that he was there, and so the liability of the defendant must depend entirely on the question of negligence in the handling of the train.

We have held in a number of cases that if, when a train is stopping, it is negligently given a violent, unusual and unnecessary jerk by means of which a passenger is thrown from the train or otherwise injured, the company is liable. (Dallas v. I. C. R. R. Co., 144 Ky., 737; 150 Ky., 442; Central Ky. Traction Co. v. Smedley, 150 Ky., 598; L. H. & St. L. R. R. Co. v. Stilwell, 142 Ky., 230; L. & N.

R. R. Co. v. Kemp's Admr., 149 Ky., 344.) There was no negligence in the company announcing the station before the train stopped. Section 784, Ky. St., provides that the railroad company "shall cause to be announced twice within each passenger car of every passenger train within reasonable time before its arrival at a station, at which from notice given it is to stop, the name of such station." In L. & N. R. R. Co. v. Morris, 23 R., 448, where as here the plaintiff fell from the platform of the car after the station had been announced, this court refusing a recovery said:

"It was the duty of the conductor, or some one else connected with the train to announce Frankfort as the next station at which the train would stop, and it certainly cannot be said to have been prematurely done, as the train had entered within the limits of the city. While the appellee did not have a seat in the car, still, from his own testimony, there was standing room on the inside, and there was no occasion for him to go upon the platform. The object of the announcement of the station is to give the passengers an opportunity to prepare to leave the train on its arrival at the station. This court has held that it is the duty of a railroad company to afford passengers a reasonable time in which to alight from a train after its arrival at the station. The company had nothing to do with the presence of the appellee on the platform, neither is there any evidence to show that any of its agents knew that he was standing there. It is said that the train started suddenly. It is a matter of common knowledge that in the movement of trains if the speed is slackened and then increased there would necessarily be a sudden movement forward, resulting from taking up the slack in the train. In an effort to accelerate its movement this must necessarily follow. When one enters a train he is bound to know that the very thing described by the appellee as to its movement is likely to happen at any time. If he voluntarily puts himself upon the platform of a car and is thus thrown from it by reason of jerks and sudden movements that are necessarily given in hauling trains over roads, he must suffer the consequences of his act without compensation in damages for the injuries he may have sustained thereby. From the position the engineer occupies it is almost impossible for him to know when a passenger may be standing upon a platform and occupying a perilous position. No one testified that the sudden movement forward was unnecessary, unusual or

the result of negligence, nor was any evidence introduced tending to show such was the case.''

In I. C. R. R. Co. v. Boles, 24 R., 2282, we again said in a similar case:

''There is no evidence in the case tending to show any unusual jerk or suddenness in the stopping of the train. Common experience teaches that there is always some sway in the cars when the train is stopped.''

In I. C. R. R. Co. v. Jolly, 117 Ky., 632, we said:

''It is a matter of common knowledge that, as a rapidly rolling passenger train stops at a station, there is a forward movement of persons even sitting in the car. This movement is much more pronounced when one is standing up, and there is greater danger of an old person falling than in the case of one younger, or who is on the lookout, from experience, for the forward surge of the body just as the train abruptly stops. The railroad company is not responsible for this. No amount of care can avoid it. It is not due to any jolt or jar of the train, but simply to the fact that the body of the person standing up continues to move forward when the feet, resting on the floor of the car, have stopped. It is safest for passengers on railway trains to keep their seats until the train stops. If they leave their seats when the train is approaching the station, they take the risk of those things which are incidental to the stopping of the train in the usual way, and with proper care. * * *

''In lieu of instruction 7, the court should have instructed the jury that if they believed from the evidence that, before the train stopped at the station, the plaintiff left her seat, and stood up at the door of the car, and while standing there was caused to fall by the stopping of the train in the usual manner, with no more jerk than was incidental to the stopping of the train in the exercise of proper care, as defined in instruction 3, they should find for the defendant.''

These cases are conclusive of the one before us. While the plaintiff testifies that the coaches pitching up together caused a sudden jerk or chug which threw him from the train, there is nothing in his testimony to show that the jerk of the train was unusually violent or more violent than was reasonably incidental to the stopping of the train if handled with care. When a rapid moving train is stopped, necessarily the cars are closed together, and there will be a tendency for a person standing on the platform to be pitched forward. Persons who are in the

habit of traveling on railroad trains understand and guard against this. Lunsford was on the train for the second time in his life and evidently not realizing the danger, was thrown off by the jerk incidental to the stopping of the train. But there is an entire want of evidence to show any negligence in the management of the train or that the jerk which threw Lunsford off was more violent than should reasonably be anticipated under the circumstances. Negligence is not presumed, and although it may be inferred from circumstances, there must be in cases of this character some evidence showing that the jerk of the cars was unusual and more violent than would be fairly incidental to the running of the train in the exercise of proper care.

Judgment affirmed.