## Millers Creek Railroad Company v. Blevins.

(Decided October 29, 1918.)

### Appeal from Johnson Circuit Court.

1.  Carriers—Risks Assumed by Passengers.—Passengers on freight or mixed trains assume the additional dangers arising from jerks or other causes incident to the operation of such trains, but this does not relieve the carrier from using the highest degree of care to prevent unusual and unnecessary jolts, jerks or jars by such trains which are not usual and incidental to their prudent operation.

2.  Carriers—Action for Injuries by Passenger—Instructions.—An instruction to find for plaintiff, who was a passenger on a mixed train, if the jury believed that it was so negligently operated as to produce a jerk "not necessary or usual in the operation of said train," whereby plaintiff was injured, is not erroneous because it did not define the train as a mixed one when in another instruction the proper degree of care in the operation of a mixed train was defined.

3.  Carriers—Action for Injuries by Passenger—Evidence.—Testimony as to the character of jerk, jolt or jar of a train carrying passengers need not be expressly stated by the witnesses to be violent, unusual and unnecessary, it being sufficient, if the kind of such jolt, jerk or jar is shown by the testimony to have been of the character mentioned, and which would authorize the jury to so find.

E. C. O'REAR, ALLIE W. YOUNG, FOGG & KIRK and JOS. C. JONES for appellant.

VAUGHN & HOWES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, Mrs. Lusinda Blevins, on the 26th day of March, 1916, boarded a train of appellant and defendant below, Millers Creek Railroad Company, for the purpose of being transported from VanLear Junction to VanLear, both in Johnson county, Kentucky. She was about 45 years of age, and weighed 225 pounds, and at the time of her alleged injuries she had not taken her seat in the car, but was looking for one, and had a grip in one hand and with the other was leading a small child. Claiming that while thus situated defendant, by the careless handling of its train, produced a sudden, unnecessary and unusual jerk, causing her to fall against her son-in-law, immediately in front, and injuring her, she filed this suit to recover $3,000.00 damages as compensation for her alleged injuries.

The answer was a traverse and a plea of contributory negligence, the latter of which was denied, and upon trial the jury returned a verdict in favor of plaintiff for the sum of $500.00, upon which the court rendered judgment, to reverse which the defendant prosecutes this appeal.

Practically all of the grounds contained in section 340 of the Civil Code as reasons for a new trial are relied upon in the motion for that purpose which defendant filed, but the chief ones urged here are: Error in instruction No. 3 given to the jury; that the court should have sustained defendant's motion for a peremptory instruction, and that the verdict was flagrantly against the evidence in that the testimony failed to show that the alleged lurch or jerk of the train was unusual, violent or unnecessary.

The uncontradicted testimony shows that one of plaintiff's hips was bruised and strained, and that her back was wrenched, which produced considerable pain, and forced her to remain in bed for ten days or two weeks, and that her ability to work and earn money has been greatly impaired. According to her testimony, and that of some of her witnesses, she was not entirely recovered at the time of the trial. However, we find no complaint made because of the size of the verdict.

The train was a mixed one, carrying both freight and passengers, and there were some fourteen or fif-

teen loaded coal cars in front of the passenger coach, which was at the rear. It is the settled law with reference to carriers of passengers that inasmuch as jerks and lurches of the train are unavoidable to some extent, for the carrier to be liable for injuries sustained by them they must be unusual, violent and unnecessary. This is so fundamental as not to require the citation of authorities. An equally fundamental rule is that freight trains or mixed trains being less equipped with appliances for smooth handling than are regular passenger trains, a passenger on one of them assumes the inconveniences and additional risks that are usual and reasonably incident to transportation on such trains. 10 C. J. 865 and 975; I. C. R. R. Co. v. Vinson, 25 Ky. Law Rep. 381; C. & O. Ry. Co. v Jordon, *idem,* 574, and Morgan v. C. & O. Ry. Co., 127 Ky. 433. However, an assumption by the passenger on such trains of the increased risk produced by the additional jerks growing out of the careful handling of such mixed trains does not relieve the carrier from the exercise of the highest degree of care toward the passenger in handling that character of train. The rule upon this subject is well stated in Corpus Juris, *supra,* 975, in this language:

"Passengers on freight or mixed trains assume the additional risk of such additional jerking and jarring as is incident to the operation of such trains, as distinguished from passenger trains, and such jerks or jars will not constitute negligence; but this does not relieve the carrier from using the highest degree of care to prevent unusual or unnecessary jolts or jars by such trains."

This text is supported by adjudications from many states, including those from Kentucky, *supra,* and indeed the rule does not seem to be denied by counsel for defendant. The trial court recognized this distinction between the rights of a passenger upon a mixed train and their rights upon a regular passenger train, as well as the measure of care due from the carrier in the operation of such trains, by instruction No. 5, which it gave to the jury at the instance of appellant. This instruction in substance told the jury that riding on mixed trains composed of both freight and passenger cars is unavoidably accompanied by more danger, &c., than riding upon exclusively passenger trains, and that

a passenger upon mixed trains assumed such dangers and risks, and if the jury believed that the jerk complained of was produced by the passenger coach being struck by a freight car in front, which was carefully handled, and that it produced no more jar or jolt than is usual in handling such trains, then the jury would find for the defendant. Instruction No. 3, expressly complained of, is, in so far as necessary for the consideration of defendant's objection thereto, in these words:

"If the jury believe from the evidence that the agents of defendant in charge of the train upon which plaintiff was a passenger so negligently operated said train as that plaintiff was by a sudden or violent jerk, not necessary or usual in the operation of said train, caused to fall and thereby injure her, they will find for the plaintiff," &c.

The criticism of this instruction is that it does not point out the distinction between the operation of a mixed train and that of a regular passenger train, but it will be observed that the quality of jerk therein described which would fasten negligence upon the defendant and permit the plaintiff to recover for any injury produced thereby is one "not necessary or usual in the operation of said train," and "said train" is the character of one described in instruction No. 5 above referred to, and which is the character of train upon which plaintiff was admittedly a passenger. When instruction No. 3 is considered, in the light of instruction No. 5 (it being admitted that the train was a mixed train) the words "said train," in instruction No. 3 can not be construed to mean, nor could the jury have understood it to mean anything more than if instruction No. 3 had used the words "said mixed train." We therefore find no merit in the criticism of instruction No. 3.

It is insisted that the evidence did not show the jerk complained of to have been violent, unusual and unnecessary. It is not necessary, in order to establish this fact, for the witnesses in describing it to expressly use the words, "violent, unusual and unnecessary." If the violence of the jerk is of such character as to authorize the jury to infer that it was unusual and unnecessary; and that it could have been produced only by careless operation, it will be sufficient. However, in this case some of the witnesses did say that the jerk was unusual

and more violent than they had ever experienced on that particular train upon which they had many times ridden. It is true that witnesses who were employees of the defendant stated that they did not observe, after their attention was called to the fact some two weeks later, any unusual or unnecessary jerking of the train upon the occasion complained of. But every witness who was a passenger testified to the character of the jerk in such terms as would authorize the jury to find that it was unusual and unnecessary, even in the handling of a mixed train. The fact is also not to be overlooked that the coach was full of passengers, and not one of them was introduced by the defendant. We can not, in the light of these facts, say that a peremptory instruction should have gone in favor of defendant, nor can we say that the verdict in favor of plaintiff was either unsupported by the testimony or was flagrantly against it.

Wherefore, the judgment is affirmed.