## Chesapeake & Ohio Railway Company v. Hay.

(Decided March 7, 1933.)

HUNT & BUSH, B. L. KESSINGER and MORRIS & JONES for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires a review of a trial before a jury in which judgment was entered in favor of Mary Belle Hay for $2,600 against the Chesapeake & Ohio Railway Company, for a personal injury sustained by her, while travelling on one of its passenger cars in the nighttime from Frankfort, Ky., to Staunton, Va., by way of Ashland, Ky., on the 8th day of September, 1926. She was accompanied by her daughter, who was on her way to enter school at Staunton. They were occupying a Pullman; Mrs. Hay using the upper, and her daughter the lower, berth. The daughter was sick, and Mrs. Hay, to get water for her, went to the washroom, pushed the door back, and fastened it with a clamp on the door. She got a glass, came out of the washroom, put some medicine in it, and gave it to her daughter; went back toward the washroom with the glass in her hand, but, before she got all the way into the washroom, she claims, the train stopped suddenly, without slowing up or sounding the whistle, or gradually applying the brakes, when, as she threw her left hand out for support, and grabbed at the door or wall of the washroom, her feet went from under her, and she fell, releasing the door, and it slammed upon her finger, catching it so high up that she could not sit upon the floor, but was suspended by her finger, until she finally released it by her own exertions. She rescued herself by catching hold of the knob of the door and dragging herself onto her feet, at the same time pulling against the finger and pushing the door open.

Her daughter states that her mother was taking the glass back into the washroom, when the train gave a sudden, violent "jerk," so violent that it threw her to the foot of the berth, her feet striking the wall; that she did not see her mother "until after that," and that the door had closed, her finger had caught, and she was "hanging there, she got the door undone, came and sat down in the coach," and directed her to ring for the porter. In her second description of the motion of the train she states, "We were going around a curve at a rapid rate of speed; didn't seem to be any slowing down before we stopped, just stopped suddenly."

W. A. Conway was the conductor on the Pullman on the night Mrs. Hay sustained her injury. He states that the train left Louisville, Ky., at 6 p. m., and was due at Ashland, Ky., at 12.50 a. m. He was and had been a Pullman conductor on the Chesapeake & Ohio Railroad Company's train, running regularly from Louisville, Ky., to Ashland, Ky., for three years. The train left Louisville on schedule time and arrived on time at Ashland. The last stop before arriving at Ashland was Hitchens, about 30 miles before reaching Ashland. The usual schedule time from Hitchens to Ashland was about 40 or 45 minutes. He was in charge of the Pullman on which she was riding, and R. Madison was porter, until he went off duty at 10:30 at night, after leaving Winchester, Ky. Conway did not retire, but went off duty at Ashland. After Madison retired, the conductor, Conway, went to the car every few minutes to see if everything was regular. He spent most of the time in the car in which Mrs. Hay and her daughter were riding. Neither before nor after Madison went off duty Conway claims that he received no signal or notification to report to the drawing room in which Mrs. Hay and her daughter were traveling, nor did he receive any information of her injury.

After leaving Hitchens, going in the direction of Ashland for 25 miles, there are several curves in the track, which are known as left and right curves. Conway claims that the train made no stop between Ashland and Hitchens, and that no signal was given for a stop, nor did he recall any lurch or jerk of the train more than usual.

Mrs. Hay and her daughter claim that a porter from another car and another who claimed that he was the brakeman, came with a lantern, and that a doctor was procured, who wanted to give her a hyperdermic, when she refused to accept it, but that he poured iodine on her finger and wrapped it with dry bandage.

Dudley Trice was one of the Pullman porters on the train on the night Mrs. Hay claims she sustained her injury, and, when porter Madison went off duty at 11:30, he remained on duty until 2:30; that, while Madison was off duty, it was his duty to look after the Pullman, and that he was in charge of two Pullman cars

from 11:30 until 2:30, in one of which Mrs. Hay and her daughter were traveling. He says that no signal was given and that no call was made for him until the train arrived at Ashland. After arriving, it came to a full stop, when he aswered the bell, and then Mrs. Hay informed him that she wanted the conductor. He informed her that there was no conductor on duty at that time; that he would be on the other train. She called for some water, and stated that she had ''pulled the door too on her hand and mashed it''; that he went to a restaurant, procured water for her, and by that time the other train had come in. He asked her if she wanted a doctor, and she informed him that she did, and then he went to the day coach, where he found Dr. Swope, and requested him to attend Mrs. Hay, which he did. Dr. Swope described her injury thus: ''She had a bruise and contusions of three fingers on the left hand,'' and stated that he put dressing on all three fingers, wrapping them separately. Trice claims the train did not stop or slow down after it left Hitchens until it arrived at Ashland, and that it did not lurch or jerk more than usual or than was necessary.

During the trial in the circuit court, Mrs. Hay by counsel stated that no claim was made that any injury was done to the bones of her finger, and that no such claim had ever been made.

At the conclusion of the evidence, the Chesapeake & Ohio Railway Company requested a directed verdict, which was refused by the court. Mrs. Hay offered instructions 1, 2, 3, and 4, which were given by the court. The court gave on its own motion instruction No. 6. At the request of the railway company, it gave instruction No. 5. The railway company objected to instructions 1, 2, 3. Its objection was overruled, and an exception was saved. Instruction No. 1 defines the degree of care which defendant owed Mrs. Hay as a passenger, and further directs the jury that, if it believed from the evidence that ''the defendant in charge of the operation of its train negligently caused it to stop in a sudden, violent and unusual manner,'' and that as the direct and proximate result thereof she was thrown to the floor of the car and her hand caught in the door, and her finger injured, to find for her, but, unless it so believed, to find for the railway company. No. 2

defines the highest degree of care; No. 3 the measure of damages, and authorizes the jury to find, in addition to compensatory damage, damage for the permanent impairment of her ability to earn money that directly resulted from her injury, in all not exceeding $2,600.

Instruction A, offered by the railway company, reads:

"The court instructs the jury that it was only the duty of the defendant to operate its train in a reasonably prudent and careful manner, and that defendant is not responsible for any jerk or lurch of its train when so operated; and if the jury believe from the evidence that plaintiff was injured, if she was injured, by reason of a jerk or lurch of said train when same was being operated in a reasonably prudent and careful manner, then the law is for the defendant and the jury will so find."

The railway company criticizes instruction No. 1 because it omits the word "unnecessary." Mrs. Hay argues that the instruction is substantially identical with the instruction which was given in L. & N. R. R. Co. v. Kemp's Adm'r, 149 Ky. 344, 149 S. W. 835, 836. The instructions in the Kemp Case are not copied haec verba in the opinion, but only in substance. After so stating them in the opinion, this language follows:

"The defendant asked the court to instruct the jury that the plaintiff could not recover, unless the deceased was caused to fall by an unusual or unnecessary jerk of the train. This instruction was in substance embraced in instruction 3 given by the court. Instructions 2 and 3, asked by the defendant, were in substance given in this instruction of the court."

The word "unnecessary" is not used in the instructions as they are set out in the Kemp Case. The language used in the Kemp Case in discussing those instructions clearly recognizes the rule that it is proper in such case to confine the jury in its determination of the liability of the railroad company, and of the right of a plaintiff to recover, to an "unnecessary" stop or jerk of the train. While instruction No. 2 in that case directed the jury to find a verdict if the train was "negligently caused to start in a sudden, violent and

unusual manner, and by reason thereof, the plaintiff was thrown to the floor of the car and injured, to find for her," the vice of this instruction, because of its failure to use the word "unnecessary," was the same error which appeared in instruction No. 3, which was asked by the defendant. Having requested the court to give No. 3 containing the same language appearing in No. 2, this court might well have rested its opinion on the familiar rule that a party who offers an instruction in substance identical with that contained in one given by the court is not in a position to complain of the act of the court in giving an instruction containing the same vice. Moise v. Burton, 197 Ky. 538, 247 S. W. 744. It is an established principle, recognized by this court in many cases, that, in a suit to recover damages by a passenger against a carrier for injuries inflicted by the jerk or stop of a train or car, the plaintiff must both allege and prove that it was sudden, unusual, and unnecessary, and, in addition thereto, that it was of such violence as to indicate negligence on the part of the carrier, and an instruction which does not import all of these elements is improper. Lexington Ry. Co. v. Britton, 130 Ky. 676, 114 S. W. 295; L., H. & St. L. Ry. Co. v. Stillwell, 142 Ky. 330, 134 S. W. 202; I. C. Ry. Co. v. Dallas' Adm'x, 150 Ky. 442, 150 S. W. 536; Louisville Ry. Co. v. Wilder, 143 Ky. 436, 136 S. W. 892; Wilder v. Louisville Ry. Co., 157 Ky. 17, 162 S. W. 557; Central Ky. Traction Co. v. Smedley, 150 Ky. 598, 150 S. W. 658; Lunsford v. L. & N. R. R. Co., 153 Ky. 283, 155 S. W. 378, 379; Louisville Ry. Co. v. Osborne, 157 Ky. 341, 163 S. W. 189; South Covington & Cincinnati Ry. Co. v. Trowbridge, 163 Ky. 79, 173 S. W. 371; Louisville Ry. Co. v. Osborne, 171 Ky. 348, 188 S. W. 419; L. & N. R. R. Co. v. Spears' Adm'r, 192 Ky. 64, 232 S. W. 60; L. & N. R. R. Co. v. Burk, 207 Ky. 1, 268 S. W. 844; Millers Creek Ry. Co. v. Blevins, 181 Ky. 800, 205 S. W. 911; Louisville Ry. Co. v. Roberts, 190 Ky. 744, 228 S. W. 681.

In Lunsford v. L. & N. R. R. Co. supra, L. & N. R. R. Co. v. Kemp's Adm'r and other cases cited to sustain this statement in the opinion:

"We have held in a number of cases that if, when a train is stopping, it is negligently given a violent, unusual, and unnecessary jerk, by means of

which a passenger is thrown from the train or otherwise injured, the company is liable.''

In Johnson v. L. & N. R. R. Co., 179 Ky. 81, 200 S. W. 50, L. & N. R. R. Co. v. Kemp's Adm'r was again cited by this court as authority for this statement: ''It is manifest from this evidence there was an unusual jerk, violent in its nature, and apparently unnecessary, and, if the jerk which he and Hower Wise testify was made by the train caused him to fall, and he was injured under the circumstances related above, undoubtedly he was entitled to have his case submitted to the jury, he at the time exercising ordinary care for his own safety.''

The opinions in the Lunsford and the Johnson Cases clearly indicate that in the mind of the court L. & N. R. R. Co. v. Kemp's Adm'r was regarded as approving the rule so aptly stated in the Roberts Case. In Illinois Central R. R. Co. v. Dallas, the instructions were prepared by this court and directed to be given on a subsequent trial. Again in L. H. & St. L. Ry. Co. v. Stillwell, this court prepared the instructions and directed them to be given. In these two cases the court prepared the instructions applying the rule stated in the Roberts Case. So the rule as enunciated in the Roberts Case may now be considered as the correct one in this jurisdiction. In so far as the contrary may appear in L. & N. R. R. Co. v. Kemp's Adm'r, 149 Ky. 344, 149 S. W. 835, it is overruled.

Mrs. Hay's theory is that the train stopped so suddenly and violently that it caused her injury. That of the railroad company is that the train did not stop at all until it reached Ashland. The testimony of the daughter was, ''the train gave a sudden and violent jerk.'' Those in charge of the Pullman state the track was smooth, but curved both to the left and right, before it reaches Ashland, Ky., which causes more or less swinging or jerking of the cars. On the disputed facts Mrs. Hay was clearly entitled to have the case submitted to the jury. The parties had the right to have presented, and it was the duty of the court to present, their respective theories to the jury by appropriate instructions. Shafer v. Chesapeake & O. Ry. Co. 228 Ky. 219, 14 S. W. (2d) 780. The theory of the railroad, which is supported by some evidence, was that the train, if it caused the injury to Mrs. Hay,

lurched or jerked from its necessary, usual, and ordinary operation, without negligence. The instructions as given fail to conform to the rule in such cases.

The instructions offered by the railroad company inaptly presented the theory of the defense. It sufficed to impose upon the court the duty to direct the preparation, or the giving of a correct one in lieu of it. Because of the erroneous instructions, the case must be reversed, and on another trial the court will instruct the jury as we have indicated. Mrs. Hay and her daughter disclose in their testimony the acts and statements of the employees of the Pullman company, who were in charge of the car in which they were riding. The acts and statements about which they testify were no part of the res gestae, and should not have been admitted. Stewart v. Com., 235 Ky. 670, 32 S. W. (2d) 29; Barton v. Com., 238 Ky. 356, 38 S. W. (2d) 218; National Life & Accident Insurance Co. v. Hedges, 233 Ky. 844, 27 S. W. (2d) 422.

It is argued by the railroad company that the evidence was insufficient to authorize the giving of the instruction on the question of permanent impairment of Mrs. Hay's power to earn money. It appears that this instruction was given on the allegation of the petition supported by the testimony of Dr. Patterson. It is very clear from his testimony, as well as that of Mrs. Hay, that her finger to all outward appearances had fully recovered from the injury, and that the only evidence of the permanency thereof is Dr. Patterson's statement that the injury has affected her grip, and the muscles of her arm, accompanied by symptoms of more or less nervousness. On a careful review of his testimony, it discloses that he predicates his opinion that her injury was permanent upon her declaration to him that the feeling of the hand and arm are yet affected as the consequence of the injury to her finger, but it is not clear from his testimony at what time he heard her statements respecting these symptoms, sufficient to enable us to determine whether his opinion respecting the permanency of her injury, authorizes the giving of the instruction for the recovery of damage for the permanent impairment of her power to earn money. Whatever was said by Mrs. Hay to Dr. Patterson to enable him to diagnose and determine the extent of her injury, and to enable him to prescribe the

proper remedy in his view for her treatment, was admissible, but not otherwise. Hill's Adm'x v. N. A. Accident Ins. Co. 185 Ky. 520, 215 S. W. 428. The rule admitting such evidence rests logically upon the necessity of the case, and it must stop with the necessity for it. If it was necessary for him to know the facts above indicated to enable him to treat her, and she related her experience respecting these symptoms for that purpose, it was proper to admit his testimony detailing them. Hill's Adm'x v. N. A. Accident Ins. Co., supra. If her statements as to these subjective symptoms were not made while she was seeking or receiving medical treatment from him, but were made to him subsequent to his treatment of her injury, it would be improper for Dr. Patterson to narrate her statements to the jury. L. & N. R. R. Co. v. Smith, 84 S. W. 755, 27 Ky. Law Rep. 257. With these rules in mind, the court should determine the admissibility of the testimony of Dr. Patterson, and accordingly determine in the light of the other evidence bearing on the topic the propriety of the giving of the instruction authorizing damage for the diminution of her power to earn money, as the direct, proximate result of her injury. The railroad company presents the question of excessive damages allowed by the verdict of the jury. Since the case must be retried and this question may not again arise, we refrain from expressing an opinion on the question of excessive damages, and reserve that question.

For the errors committed in the giving of the instructions, the judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.