## Scanlon-Thompson Coal Company v. Gambill, et al.

(Decided November 18, 1927.)

### Appeal from Breathitt Circuit Court

1. Sales.—Where buyer, after examining coal, and finding that it fell short of specifications, failed to reject it, but unloaded it on premises of school board, to whom it had made resale, but was later compelled to remove it, buyer could not resist payment of purchase price or recover damages on account of inferior quality.
2. Sales.—In action for purchase price of coal, buyer was not estopped to assert claim for inferior quality of coal, where buyer had no opportunity to inspect it until it had been unloaded on premises of school board to whom it had been resold.
3. Sales.—Instruction, in action to recover purchase price of coal, that jury should find for plaintiff, unless it believed coal in controversy did not come up to "specifications called for by the contracts," should advise jury as to particular specifications involved.
4. Sales.—In action to recover purchase price of coal, in which it was asserted that coal sold was of quality inferior to that contracted for, buyer's measure of damages was difference between reasonable market value of coal of quality contracted for, at time and place of delivery, and reasonable market value, at such time and place, of coal of quality delivered, and instruction that measure was difference between contract price and real value of coal was erroneous.

WM. G. DEARING for appellant.

HENRY L. SPENCER for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This is an appeal from a judgment in favor of the appellees in the sum of $1,000 for the balance of the sale price of coal sold by it to the appellant. The original petition in this case declared on a note which purported to be executed for the appellant by its vice president.

The answer of the appellant put in issue the authority of this vice president to execute this note, and a great deal of appellant's brief is devoted to this question. We do not deem it necessary, however, to enter into a discussion of this matter, because the amended petition filed by appellee quite clearly declared on an open account for coal sold and delivered by it to appellant under two contracts entered into by these parties. The appellant by its answer presented a counterclaim, alleging that the contract under which the coal in question was sold fixed certain standards as to its quality, and that seven carloads of the coal had failed to come up to those standards, by reason of which it had been damaged in a named sum.

The coal in controversy had been resold by the appellant to the Louisville school board. The appellees denied the alleged defect of the coal, and pleaded an estoppel on the part of the appellant to rely on any such claim, which was in turn denied by appellant. As to two of the seven carloads mentioned, the evidence shows that the appellant's attention was called by the Louisville school board to them before they were unloaded and while they were yet on a siding. The evidence of the appellant itself clearly establishes that a cursory inspection of this coal while yet in the cars showed that it did not come up to the specification which the appellant claimed was a part of its contract. Despite this, however, the appellant, instead of rejecting the coal, had it unloaded in the school board's yards, but was later compelled to remove the coal from these yards. Thus far, this case cannot be distinguished from that of Brown v. Price, 207 Ky. 8, 268 S. W. 590, where in almost an identically same kind of a case we held that the purchaser was responsible for the purchase price of the coal, and was not entitled to any damages because of its inferior quality. As to the other five carloads of coal, however, the evidence fails to show that the appellant had any opportunity to inspect it before it had been so placed in the yards of the Louisville school board as to be impossible of removal; which being true, the appellant was entitled to make what claim it could in this action concerning its defective quality. See Bradley v. Lexington Tobacco Hogshead Co., 156 Ky. 813, 162 S. W. 83.

The evidence as to the quality of this coal greatly preponderated on the side of the appellant. There was

some evidence to the contrary offered by appellees. Whether the verdict of the jury, which in substance found there was no defect in the quality of the coal, is flagrantly against the evidence, we do not pass upon at this time, for the case must be reversed on other grounds, and the evidence on this point may be different on the next trial. The court in its instruction to the jury in substance told it that it should find for the appellees in the sum of $1,000, unless it believed that the coal in controversy did not come up to "the specifications" called for by the contracts. The court, however, in this instruction failed to tell the jury what these specifications were, and this it should have done. Further, in defining the measure of damages, if the coal did not come up to the required specifications, the court told the jury that it should find for the appellant on its counterclaim any difference between the contract price "and the real value of said coal." That this part of the instruction was erroneuos is too clear for argument. The measure of damages was the difference, if any, between the reasonable market value of the coal of the quality contracted for at the time and place of delivery and the reasonable market value at the time and place of delivery of the coal of the quality as delivered. Riglesberger v. Katterjohn, 180 Ky. 139, 201 S. W. 459. For the errors in this instruction, the case will have to be reversed, but on the next trial, if the evidence be the same as on the last trial, the court will confine appellant's counterclaim to the last five cars.

Judgment reversed, with instructions to grant the appellant a new trial in conformity with this opinion.