## Scanlon-Thompson Coal Company v. Lick Branch Coal Company.

## Lick Branch Coal Company v. Scanlon-Thompson Coal Company.

(Decided February 16, 1932.)

W. G. DEARING for plaintiff.

HENRY L. SPENCER for defendant.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

In March, 1925, Edward L. Gambill and Fred T. Hurt, partners doing business under the firm name of the Lick Branch Coal Company, instituted this action in the Breathitt circuit court against the Scanlon-Thompson Coal Company, a corporation engaged in business in Louisville, Ky., seeking to recover the sum of $1,000 for the balance of the contract price of coal sold and delivered to the latter. From a judgment in favor of plaintiffs, appeal was prosecuted, and by an opinion found in

Scanlon-Thompson Coal Co. v. Gambill, 221 Ky. 819, 299 S. W. 978, the lower court's judgment was reversed for a new trial in conformity with that opinion.

After the case was remanded, additional proof was heard and a trial again resulted in a verdict and judgment in favor of plaintiffs for the sum of $1,000, the amount prayed for in the petition, and defendant has again appealed. There is no controversy over the quantity or contract price of the coal furnished by appellees to appellant, but by answer and counterclaim, it is alleged that appellant has been damaged by reason of failure of seven carloads of the coal to measure up to certain standards fixed by the contract. Appellees by reply denied that the seven carloads of coal in controversy were of inferior quality or that it failed to come up to the standard provided for by the contract, and further pleaded certain acts of appellant in estoppel of its rights to assert any claim for damages because of the alleged inferiority of the coal.

In the opinion on former appeal it was pointed out that appellant's attention had been called to the quality of two of the seven carloads of coal before it was unloaded. Evidence offered on behalf of appellant established that a cursory inspection of the coal while it was yet in the cars revealed that it did not come up to the specifications provided for in the contract between parties, but despite this knowledge, appellant unloaded the coal. It was pointed out in so far as the two carloads were concerned, this case could not be distinguished from that of Brown v. Price, 207 Ky. 8, 268 S. W. 590, where, in disposing of a similar question, it was held that the purchaser was liable for the contract price of the coal and was not entitled to damages because of its inferior quality. As to the other five carloads, the opinion continuing said:

> "As to the other five carloads of coal, however, the evidence fails to show that the appellant had any opportunity to inspect it before it had been so placed in the yards of the Louisville school board as to be impossible of removal; which being true, the appellant was entitled to make what claim it could in this action concerning its defective quality."

On second trial, considerable proof was heard on the question as to the quality of the five carloads of coal

and also as to whether appellant's attention was called to it and whether it had opportunity to and did inspect the coal. Appellant had resold the coal in controversy to the Louisville school board and the five carloads had been placed on a siding at or near the school buildings where the coal was to be delivered. There is evidence that J. G. Duncan, an employee of the school board, and L. M. Smith, an employee of appellant, did inspect the five carloads of coal. Mr. Duncan testified that he called Mr. Smith and that they together went over the five cars. He told Smith that the coal was of inferior quality, and Smith agreed that it did not come up to the quality of coal which had theretofore been furnished appellant by appellees and in turn delivered by appellant to the school board. They took samples of coal from the various cars for the purpose of having a chemist or analyst make an analysis. Duncan testified positively that he notified Smith that he would not receive the coal for the board. In this he was corroborated by William Bryant. Smith testified that he saw the coal and that it was inferior in quality and that he was present when Duncan took samples to furnish the analyst.

Question is made as to whether Smith had the authority to bind appellant in receiving coal and whether notice to him that the coal would not be received because of its inferiority would be notice to appellant. There is a sharp conflict in evidence on this question. Smith testified that his duties were somewhat in the nature of a "straw boss" with supervision over employees in unloading coal, but that he had no authority to reject coal and it was not his duty to notify his employer of complaints with reference to the quality of the coal. The evidence of officers and employees of appellant is to the effect that Smith's only duties were to supervise the unloading of coal. Mr. Duncan testified that he told Mr. Smith that the school board would not accept the coal; that after the coal had been unloaded he had a talk with Mr. Thompson. In the evidence of Mr. Duncan, we find the following questions and answers:

"Q. 19. The coal was unloaded and in the yard before Mr. Thompson was notified, was it not? A. Yes, but I notified Mr. Smith; I did not know anything about Mr. Thompson; I do no business with Mr. Thompson; my business was with Mr. Smith exclusively.

"Q. 20. Then your notification was to Mr. Smith? A. Yes, according to the orders from the Scanlon-Thompson Coal Company. When this contract was signed, Mr. Jones notified me and notified the Scanlon-Thompson Coal Company to meet with me in their office, which we did; that was the first time I met any of them, and I was notified that Mr. Smith would take care of all the business that was transacted between their firm and the School Board at that time, and I and him worked together. I just picked up some of the little things that I have still on record pertaining to transaction of business between me and Mr. Smith, very small matters, and that is why I notified Mr. Smith as the representative and according to the statements made in their office after the contract was signed with the School Board, and I thought at the time that that was the man to report to, and it seemed like he could not stop them from unloading the cars there, and the only thing I could do was to stop payment for the coal until an adjustment was made suitable to others involved."

It is urged by counsel for appellant that the verdict is contrary to the weight of evidence and the result of passion and prejudice. We might say, as was said in the opinion on former appeal, that the evidence as to the quality of the coal in controversy clearly preponderates in favor of appellant; however, a decision of this case does not turn alone on proof as to the quantity of the coal, since as pointed out, appellant cannot recover on its counterclaim if it had reasonable opportunity to or did inspect the coal before it was unloaded. We are not prepared to say that the evidence bearing on the question of appellant's opportunity to inspect the coal preponderates in its favor. Under the evidence, the conclusion that Smith had opportunity to and did inspect and knew the inferior quality of the coal is inescapable, and while there is a sharp conflict in evidence as to Smith's authority to bind the company or to receive notice for it, there is ample evidence to support a finding that he was authorized to act for appellant in all matters pertaining to the delivery of the coal to appellees.

Mere preponderance of evidence or majority of witnesses favoring appellant is not sufficient to warrant this court in disturbing the verdict of a properly instructed

jury. Kentucky Traction & Terminal Co. v. Rodman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272; La Fontaine v. Mitchell, 215 Ky. 184, 284 S. W. 1022.

We find no merit in the contention that the court erred in not peremptorily instructing the jury to find for appellant because there was not sufficient proof of the open account sued upon. The evidence was not only sufficient to take the case to the jury, but is ample to support their verdict.

It is earnestly insisted that the court erred in instructing the jury. By instruction No. 1 the jury was directed to find for appellees the sum of $1,000. But this instruction also gave the specifications provided for in the contract and directed the jury to credit its finding for appellees by any damage sustained by appellant because of inferior quality of the coal if they believed from the evidence it did not come up to the specifications, and to include in such damages the reasonable cost, if any, of rehandling the coal occasioned by the inferior quality thereof.

By instruction No. 2 the jury was instructed not to find any damages for appellant because of bad quality of the coal if they believed from the evidence that appellant or its officers in charge of its yard and the delivery of the coal had reasonable opportunity to inspect it before it was removed from the cars.

Instruction No. 3, which comes under the most severe criticism, is as follows:

"The Court further instructs the jury that if they believe from all the evidence that Luther M. Smith was merely the agent of the defendant, Scanlon-Thompson Company to receive and unload the coal, and had no other authority, then notice to the said Smith as to the condition of the coal is not notice to the defendant, Scanlon-Thompson Coal Company, and that it was not the duty of Luther M. Smith to communicate any information he may have had to the defendant, and if you believe the said Smith did not communicate the condition of the coal to the defendant, Scanlon-Thompson Coal Company, and if the seven carloads of coal or any part of same was unloaded without knowledge of the condition of the said coal on the part of the defendant, and that the defendant was damaged because of the condition of the coal, then the jury will find for the defendant

the difference, if any, between the reasonable market value of the coal of the quality contracted for at the time and place of delivery and the reasonable market value at the time and place of delivery of the coal of the quality as delivered, not exceeding the sum of $1,203.54, the amount claimed in the answer and counterclaim of defendant."

When read and considered together, these instructions clearly and properly submitted the issues to the jury.

Some question is made that the court erred in admitting evidence touching the quality of other coal taken from appellees' mines, but a careful consideration of the entire record leads us to the conclusion that the court did not err in this or in any other particular to the prejudice of appellant's substantial rights.

Immediately following the entry of the judgment plaintiffs entered a motion to set it aside and to render in lieu thereof a judgment for the same sum with interest from September 23, 1924. This motion was overruled, and from so much of the judgment and orders as refused to allow such interest, plaintiff has appealed. Their motion to hear this appeal on the record filed by the Scanlon-Thompson Coal Company has been sustained and the appeals have been heard together.

It was pointed out in the former opinion of this court that the original petition declared on a note, but that the amended petition clearly declared on an open account for coal sold and delivered.

On the return of the case to the lower court, defendant moved the court to compel plaintiffs to elect whether they would proceed to recover judgment on the note sued on or upon open account set up by way of amended petition. This motion was sustained, and plaintiffs were directed to elect, but refusing to do so, the court directed that the cause proceed upon the open account.

The note referred to in the original petition bore date September 23, 1924, and purported to be executed for appellant by its vice president. On the second trial, the court refused to admit this note in evidence.

It is insisted that by the execution of the note, the Scanlon-Thompson Coal Company admitted the debt to be just and became obligated to pay interest thereon.

106

The general rule in this jurisdiction is that in the absence of agreement, an open, unliquidated account does not bear interest. Hays v. Williams, 10 Ky. Law Rep. 319; Adams Express Co. v. Milton, 74 Ky. (11 Bush) 49; Harrodsburg Water Co. v. City, 89 S. W. 729, 28 Ky. Law Rep. 625. Defendant alleged that the person who signed the note had no authority to thus obligate or bind it and there is proof in support of this contention. To say the least, an issue on this question was made by pleading and proof, but plaintiffs did not ask or offer an instruction submitting it to the jury for determination. In the circumstances the court did not err in refusing to determine as a matter of law that plaintiffs were entitled to interest on the sum recovered from the date on which it is alleged the note was executed.

For the reasons indicated, the judgment is affirmed on both appeals.