## Louisville & Interurban Railroad Company v. Roberts.

### Same v. Same.

(Decided December 17, 1920.)

## Appeals from Oldham Circuit Court.

1. Carriers—Action By Passenger for Injury—Instructions.—In a suit to recover damages by a passenger against a carrier for an injury inflicted by a jerk of the train or car, the plaintiff must both allege and prove, not only that the jerk was sudden, unusual and unnecessary, but in addition thereto that it was of such violence as to indicate negligence on the part of the carrier, and an instruction which does not embody all these elements is improper.

2. Appeal and Error—Instructions.—An error of the court in giving or refusing to give instructions, unless relied on in the motion and reasons for a new trial will on appeal be considered as waived.

3. New Trial—Newly Discovered Evidence.—A new trial will not ordinarily be granted for newly discovered evidence, the only purpose of which is to contradict a witness who testified in the case; nor will a new trial be granted on that ground unless the party moving therefor exercises due and proper diligence to discover and produce the testimony at the trial.

4. New Trial—Carriers—Knowledge of Agent.—An agent of a common carrier whose duty it was to investigate the facts relating to an accident is a representative of the carrier and his knowl-

edge concerning a statement made by a witness who testified upon the trial contrary thereto is the knowledge of the carrier, and a new trial will not be granted on the ground that defend ant's attorneys discovered the existence of the contradictory statement after the trial, since the carrier is presumed to have had knowledge of it and should have produced it on the trial.

WILLIS, TODD & BOND and STRAUS, LEE & KRIEGER for appellant.

ROBT. T. CROWE, WILLIAM J. CROWE and JAMES A. SPEED for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the first case and affirming the second one.

The first case above is an appeal from a judgment in favor of appellee and plaintiff below, William C. Roberts, against the appellant and defendant below, Louisville & Interurban Railroad Company, for the sum of $3,166.00, which plaintiff recovered in a suit brought by him to obtain damages for personal injuries he sustained on May 7, 1917, and which it is averred were produced by defendant's negligence. The second appeal is from a judgment denying a new trial in a suit brought for that purpose by the defendant in the first case, after the first trial, upon the ground of newly discovered evidence.

Plaintiff was a passenger on one of defendant's cars running on Broadway in the city of Louisville, Kentucky, and the substance of his allegations in his petition is that as the car approached the intersection of Twelfth street with Broadway, he, desiring to leave the car at that place, and under the advice of the servants and employees of defendant, started to leave it and when he reached the steps preparatory to making his exit there was an unusual, unncessary and violent jerk of the car which threw him upon the street with such force as that he sustained his injuries, and that the jerk and sudden start of the car (being of the nature described) was the result of gross carelessness and negligence of the servants in charge of and operating it. The answer denied the negligence and in a second paragraph pleaded contributory negligence, which was controverted of record, thus completing the issues. The chief grounds relied on in this court for a reversal of the judgment in the original or first case above are: (1) erroneous instruction given over defendant's objections, and (2) misconduct of plaintiff's counsel in the examination of witnesses.

Before taking up either of these grounds we deem it proper to make a brief statement of the facts. Plaintiff lived at La Grange and boarded one of defendant's cars in the city of Louisville which he thought ran to his home but it proved to be one going in the opposite direction. After passing Tenth street on Broadway in the city the conductor on the car discovered the mistake and notified plaintiff that he could leave the car at Twelfth street and take a city car back to defendant's station, where he could take one for his home. Plaintiff's testimony as to what then occurred is: "I said, 'I will get off and walk back again,' I said 'All right,' he slowed down, I got up and got my grip and got on the step, and the man gave the car a lurch and threw me." He said that the place where he fell was between sixty and seventy feet from Twelfth street, but this was merely his opinion, and his injuries rendered him unconscious so that he could make no observations after the accident, but the uncontradicted testimony of the witnesses for both sides is that the place where plaintiff fell was something like the middle of the square between Eleventh and Twelfth streets. The car in which plaintiff was riding was partitioned, one compartment being for white passengers and the other for colored passengers, and on this trip the colored compartment was in the rear and it was from the rear end that plaintiff fell. The conductor and two other witnesses who were passengers state (and their testimony on this point is uncontradicted), that plaintiff took his seat at the rear of the white compartment and next to the colored comparment and that the conductor on discovering that he was on the wrong car informed him that he could get off at the next corner (Twelfth street) and get a city car back to Third street, where he could take one for his home; that plaintiff, in both his actions and words, appeared to be intoxicated. The conductor then testified that: "At that time I was making change for one of my passengers, a Mr. McCampbell or Campbell, and this man (plaintiff) got up and started back; I was just giving him his change and I said, 'I better go back after that fellow, he is drunk,' and I started right back after him, and just about the time he got to the rear platform to step off—the car was still moving—I grabbed at him and got hold of his coat like this (indicating), but he was a man that I guess weighed over two hundred pounds and with that hold I didn't have sufficient hold to hold him,

but I hollered at him and grabbed him and he stepped off the car with his face toward the rear of the car—just deliberately stepped off that way, and he held to the handhold with his right hand and he had his grip in his left hand, and that throwed him back—of course, naturally pulled him back." The testimony of the conductor, in the quoted portion of his testimony, is substantially corroborated by Mr. Campbell and Mr. Weller, both of whom were passengers in the car. The motorman knew nothing about the accident until after it happened and he stopped his car practically at Twelfth street. All of the witnesses for defendant, including the passengers on the car, testified that there was no jerk or lurching of it as testified to by plaintiff.

Turning now to the grounds urged for a reversal, the court gave to the jury five instructions and under ground (1) complaint is made chiefly of instruction number one, which, with number two, were the only ones touching the merits of the case, since numbers three, four and five related to the measure of damages and defined ordinary care and negligence and against which no objections could be urged. Instruction number one says:

"If the jury believe from the evidence that plaintiff exercised ordinary care for his own safety in leaving the car and in taking a position upon the steps thereof, and while standing in that position, that he was thrown from the car by an unusual and unnecessary jerk of the car and injured the law is for the plaintiff and the jury should so find."

This instruction is erroneous in at least two particulars. It did not even attempt to define the duty which defendant owed to plaintiff as a passenger and it permitted a recovery for only "an unusual and unnecessary jerk of the car," and left it for the jury to conjecture what was a negligent, unusual or unnecessary jerk. In the cases of Louisville Railway Company v. Wilder, 143 Ky. 436, Wilder v. Louisville Railway Company, 157 Ky. 17, Louisville Railway Company v. Osborne, 157 Ky. 341, South Covington & Cincinnati Street Railway Company v. Trowbridge, 163 Ky. 79, and Louisville Railway Company v. Osborne, 171 Ky. 348, this court held that to entitle a passenger to recover for injuries produced by a jerk or lurch of the car, assuming that the passenger was at a place on the car that he had a right to be under the facts of the particular case, the jerk must not only be un-

necessary and unusual but it must be "of sufficient vio-
lence as to indicate negligence in  the  operation  of  the
car." In the Trowbridge case the rule is thus stated:

"The rule in this state is that the passenger who is
injured by reason of a jerk or lurch of  the  conveyance
may not recover therefor unless the jerk or lurch was un-
usual, unnecessary and of such violence as to indicate a
want of the required care in the operation of the convey-
ance. Louisville Railway Company v. Osborne, 157 Ky.
341."

And in the Osborne case, referred to in the quotation,
in stating the rule the opinion says:

"It is not sufficient to constitute negligence  in  law
that there may be an unusual movement of the car or a
sudden jerk of the car.  An  unusual  movement, under
some circumstances, might be entirely necessary in the
prudent operation of the car, and so when the charge is
that the movement was unusual, it should also appear
that it was unnecessary, and when it is both unusual and
unnecessary and of sufficient violence to cause injury to
a passenger, the jury may infer that the injury was caus-
ed by negligence in the operation of the car."

On the second appeal of the Osborne case (171 Ky.
348) all prior cases from this court are referred to and
approved, and the cases referred to and relied on by ap-
pellee's counsel do not assert a different doctrine.  On
the contrary a close reading of them will show that the'
rule as announced in the cases above referred to is fully
recognized.  As said in the Osborne case (157 Ky. 341),
a jerk or a lurch of a car might in strictness be unneces-
sary, or both unnecessary and unusual, but unless it is of
sufficient violence as to constitute negligence on the part
of the carrier it will furnish no cause of action to the pas-
senger for injuries thereby sustained.

Under ground (2) urged for a reversal, objection is
made to a number of very glaringly leading questions
propounded to plaintiff by his attorney, and it must be
admitted that this objection is not without reason to sup-
port it.  Some of the questions objected to are about as
leading in their form as could well be, but since a reversal
must be ordered for other reasons we will  not  further
elaborate this ground.

The defendant at the close of the testimony moved the
court to instruct the jury peremptorily in its favor, which
motion was overruled and to which  ruling  exceptions

were taken. It will be observed that this is not (under the proof) a case where an accident occurred at or near a regular stopping place of the car, or at a place where those in charge of it agreed to stop it, and it therefore is not governed by the rule permitting a passenger to recover for an injury sustained at such places under similar facts. Rather it is one where according to the testimony, the passenger, upon his own volition, attempted to alight from the car away from the stopping place and practically in the middle of the square. It is true that this court in the case of Paducah Traction Co. v. Tolar, 162 Ky. 50, sustained the plaintiff's right to recover for injuries inflicted when she attempted to alight from the car while it was moving at a point about midway between regular stopping places, but the plaintiff in that case testified in substance that the conductor knew her purpose was to get off at that particular place and that the car was running so smoothly that she thought it was stopped. Furthermore, the evidence showed that the conductor knew, not only that the car was running rapidly, but that the purpose of the plaintiff therein was to then alight therefrom, and he made no effort whatever to prevent her from doing so. We therein held that while it was not the duty of the conductor or those in charge of the car, under the circumstances, to exercise any care to discover that a passenger was about to alight, but if they did know of the fact the duty was imposed upon them to make reasonable effort to prevent the passenger from getting off, and if they fail to do so and by reason thereof the passenger was injured, the carrier would be held liable. It was said in that opinion, however, that: "On the other hand, if, as stated by the conductor, he did not know her (plaintiff's) purpose, or have opportunity to arrest her action, the company was not guilty of any negligence, and there should, and doubtless would, have been a verdict in its favor had the jury accepted the conductor's story of the accident." In this case no one contradicts the conductor's testimony as to the place, way, and manner that plaintiff attempted to alight from the car, nor does any one contradict his testimony concerning the efforts he made to prevent plaintiff from doing so. But, whether such controlling facts, which permitted a recovery in the Tolar case, are present or absent in this one, we will not now determine. Since the refusal of the court to sustain the motion for the per-

emptory instruction was not relied on in the motion for a new trial. Miller's Appellate Practice, section 55; Alexander v. Humber, 86 Ky. 569; Sehon v. Whitt, 29 Ky. L. R. 691; Finley v. Curd, 22 Ky. L. R. 1912, and Davis v. Moore, *idem* 261.

The alleged newly discovered evidence as grounds for a new trial relied on in the petition in the second case is a written statement made by one of defendant's witnesses shortly after the accident to the claim agent of defendant, who at the time was engaged in investigating the facts relative thereto. In that statement the witness said that he did not see the accident. On the trial of the case that witness testified that he saw the accident while he was standing on the street nearby and corroborated plaintiff in some of his testimony, particularly as to the jerk or lurch of the car. In the petition for a new trial it was alleged that the claim agent who took the statement from the witness was not present at the trial, and that neither the attorney nor any one representing defendant knew of the existence of the written statement. We are clearly of the opinion that the petition did not manifest sufficient ground for a new trial. In the first place, the alleged newly discovered evidence is contradictory only and impeaching in its effect, and hence, of a character for which a new trial is not ordinarily granted; and in the second place, it can not be said that due diligence to produce it at the trial was shown, since it was the duty of the defendant in the exercise of reasonable diligence to both know of the existenc of the statement and produce it on the trial. The claim agent of defendant who procured the written statement from the witness was no less its representative for the purpose of preparing the case for trial than was defendant's attorney who conducted the trial, and defendant must be charged with the knowledge of its procurement, and can not be permitted to say that it did not know of its existence, which is the only matter relied on as newly discovered evidence.

Wherefore the judgment in the first case is reversed and the judgment in the second one is affirmed.