# Cincinnati, N. & C. Ry. Co. v. Johnson.

Feb. 2, 1940.

Stephens L. Blakely, Galvin & Tracy and Arthur J. Daly for appellant.

Joseph C. Healy for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellee, Marie Johnson, claimed in this action that after boarding the front platform of one of appellant's streetcars, and, while walking back to a seat, she fell to the floor as the result of an unusually violent and unnecessary jerk of the car. She was awarded $500 by the verdict of the jury, and on this appeal, prosecuted from the judgment entered on that verdict, it is contended by appellant that the verdict should have been set aside as being flagrantly against the evidence.

It is the rule in this state that a passenger sustaining a fall by reason of a jerk or lurch of a conveyance may not recover unless the jerk or lurch was unusual, unnecessary and of such violence as to indicate a want of the required care in the operation of the conveyance. Louisville Railway Company v. Osborne, 157 Ky. 341, 163 S. W. 189; Louisville & I. Railroad Company v. Roberts, 190 Ky. 744, 228 S. W. 681, 684. In the application of this rule, however, it is held that a passenger's

testimony alone that a jerk in starting or stopping a conveyance was unusually violent and unnecessary is sufficient to uphold a verdict in his favor although numerous other witnesses testified that there was not an unusual jerk. Louisville Railway Company v. Osborne, 171 Ky. 348, 188 S. W. 419; Chesapeake & Ohio Railway Company v. Hay, 248 Ky. 69, 58 S. W. (2d) 228.

Considering the testimony in the light of these applicable principles, we find that if the verdict is to be sustained it must be done so on the strength of appellee's testimony alone since witnesses for the appellant as well as other material witnesses introduced by the appellee, contradict her testimony as to there being any unusually violent jerk of the car when it started.

Appellant's evidence discloses that there was snow and sleet on the ground at the time she entered the car. She states that after she started down the aisle of the car, and while walking towards the rear, the car started with an unusual jerk causing her to fall. At one place in her testimony she says, "He started immediately after I got on." At another place she states that her fall occurred when she had reached the first cross seat. She admits that she gave a written statement to the Company shortly after the accident in which she said: "When I got to about the third cross seat back from the front end of the car, my feet went out from under me and I fell back." She further stated that when she came to rest after her fall she was in a sitting position facing toward the rear of the car. It will thus be seen that the appellee's testimony, the only testimony which could sustain the verdict, is full of contradictions within itself in addition to being contradicted by practically all of the witnesses in the case, including some introduced by her. If the car started as soon as she boarded it and she did not fall until she had gotten to the third cross seat (approximately 11 feet down the aisle), it is apparent that her fall occurred after the starting of the car and not by reason of it.

Further, the appellee's testimony is almost, if not completely, at variance with a well recognized physical law in that it is practically an impossibility that a sudden, forward motion of the car could have caused her to fall in the manner she describes. The only fair deduction to draw from her testimony is, that while walking toward the back of the car she fell backwards toward

the front of the car and wound up in a sitting position, facing the rear of the car. It seems incredible that a fall of this nature could have been caused by the jerk of the car because it is common knowledge, and in accord with physical laws, that a jerk of the car forward would necessarily have thrown her toward the rear of the car, the direction in which she was walking. Passengers standing in a starting car sway to the rear and those standing in a stopping car sway forward. One who falls as a result of such force must necessarily fall in the direction of the sway. Had appellee advanced any plausible theory or explanation of the extraordinary manner of her fall and the unusual situation in which she found herself at the end of the fall, her testimony would not have been so greatly weakened. We recognize that after her fall started something unusual might have happened to cause the fall to terminate in the unusual situation described by her but in the absence of any such explanation it seems clear that her testimony is at variance with physical laws as well as in conflict with most of the other testimony in the case.

We are thus asked to affirm this judgment solely and alone on the appellee's testimony which in itself is so weak as to be almost of no probative value while it is opposed by strong and persuasive testimony of a number of witnesses to facts indicating that the fall occurred as a result of appellee's feet slipping out from under her by reason of the wet floor or ice and snow on her feet. This we cannot do. Were her own testimony not weakened by the contradictions contained within it and by being almost certainly opposed to well known physical laws, we would be inclined to uphold the verdict under the rule heretofore announced, but a careful consideration of the situation convinces us that the verdict of the jury must be held to be flagrantly against the evidence.

As the verdict was flagrantly against the evidence the trial court should on the next trial if the evidence is substantially the same direct a verdict in appellant's behalf. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877.

**Judgment reversed.**