## Coney Island Co., Inc., v. Brown.

May 26, 1942.

August A. Rendigs, Jr., Orie S. Ware and William O. Ware for appellant.

E. H. Walton and William E. Wehrman, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

This is a novel case. The appellee, Mrs. Frances Brown, recovered a judgment for $1,000 for personal injuries sustained by the alleged sudden, unusual and violent jerk or lurch of a river steamboat as it pulled out from the wharf.

On a clear, calm afternoon of September 3, 1938, Mrs. Brown, who was about 70 years of age, accompanied by several members of her family, boarded the "Island Queen" at Cincinnati for an excursion trip up the Ohio River. According to the evidence introduced by the plaintiff, the boat started when the party had gone up the stairs to the second deck and when she was out about 15 feet on the dancing floor. Mrs. Brown testified:

> "We were standing still to see where to go for a seat. I started over to sit down and just as I moved my right foot to take a step the boat gave a violent jerk and threw me with my limb back under me. My limb was broken at the hip on the inside."

The plaintiff's son and daughter testified that the boat started moving out sideways into the river with a

sudden, violent jerk or lurch, the son saying that he had to put out a foot to keep from falling. It does not appear that there was at the time any assertion that the fall was thus caused, and the suit was not filed until one year, less two days, afterward.

the evidence of the defendant is that when Mrs. Brown fell the boat was still tied up and other passengers were being taken on. Two men who operated cigar and refreshment stands nearby saw Mrs. Brown fall, but did not notice any sudden movement of the boat. They say it had not pulled away from the shore. The purser who had a key to the first-aid room was sent for. He was still checking in passengers and had someone to take his place while he came to Mrs. Brown's assistance. The Captain's and other officers' testimony is the same. They and several other men of long experience in operating river boats, and particularly the "Island Queen," were most emphatic that it is impossible for such or any boat to start with a jerk or lurch. This is the largest boat on the Ohio River. It is constructed entirely of steel, is 286 feet long and 85½ feet wide, and has a 5½ foot draft. The boat is propelled by side wheels 30 feet in diameter, powered by two oil burning steam engines of 750 horse power each, operating independently. The engines, the Captain testified, are too light for the size and weight of the boat and it is impossible for them to exert enough power to make her jerk or lurch. When a boat pulls out the inside wheel goes forward and the outside backward, thus pulling her head away from the wharf boat, and when she gets out far enough to clear everything she goes ahead on both wheels. This boat moves something like 100 yards before gathering full speed. The Captain testified:

"The paddle wheels in the start slip. They are not like automobile wheels on the ground. They slip. There is a slippage of 65% in the start. They slip ahead until the speed is picked up."

An exploration was made of the defendant's witnesses to ascertain if it was possible for the rear end of the boat to have been knocked against the wharf so as to have caused the sudden jerk as described. But the witnesses clearly described the situation to be that the rear end at all times rests against the wharf boat, and while they had never known of the ropes tying up the boat not to have been released in such a case, yet if they were not

untied they would break or the wharf boat itself would move at the same time, since it rests in the water and is tied to the shore by loose chains.

In short, the defendant's testimony was that no matter how much power is exerted, any boat of this character necessarily starts and moves slowly; that it is impossible to cause it to jerk or lurch. Clear reasons were given for this opinion. The plaintiff did not undertake to refute this evidence of impossibility, merely relying upon the testimony of herself, son and daughter that the boat did start with a jerk which caused her to fall.

On the law, the appellee rests her case upon the decisions that a common carrier is liable for injuries to a passenger resulting from an unnecessary, unusual and sudden jerking or stopping of a vehicle so violent as to indicate negligence. Louisville Railway Company v. Osborne, 157 Ky. 341, 163 S. W. 189; Chesapeake and O. Railway Company v. Hay, 248 Ky. 69, 58 S. W. (2d) 228, Second appeal 261 Ky. 566, 88 S. W. (2d) 318; Cincinnati, N. and C. Railway Company v. Johnson, 281 Ky. 565, 136 S. W. (2d) 769; Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S. W. (2d) 1107. All of our decisions and of other courts, so far as we know, have related to the operation of a railroad train, street car or motor vehicle. However, the law which regulates the rights and duties of such carriers is, in the main, applicable to carriers by water, even as they are by airplane, the only difference being conditions peculiar to the means and manner of transportation and certain statutory provisions. Louisville and Evansville Mail Company v. Barnes' Adm'r, 117 Ky. 860, 79 S. W. 261, 64 L. R. A. 574, 111 Am. St. Rep. 273; River Excursion Company v. Kuntz, 244 Ky. 587, 51 S. W. (2d) 911; Casteel v. American Airways, 261 Ky. 818, 88 S. W. (2d) 976. Specifically, the appellee relies upon the rule that the testimony of an injured passenger alone that there was a jerk of the degree stated is sufficient to sustain a verdict against the carrier, although numerous other witnesses testified to the contrary. Cincinnati, N. and C. Railway Company v. Johnson, supra. The difference here is not in the applicable law or in the quantity of the testimony. The controlling thing is the quality of the evidence. In each of those cases the vehicle was on wheels and so propelled that a sudden and violent jerk was not only possible but probable unless care were exer-

cised to avoid it. Here the balancing of the evidence is on the one side the certain opposing nature of the physical properties, and on the other fallible mental deductions, doubtless coupled with a psychological inspiration. The probability is that Mrs. Brown slipped and fell as it was proved the dance floor was very slick; but this cause, although pleaded, was abandoned by her in the evidence; As stated, no attempt was made to refute the testimony of men of long years' experience that it was not possible to start a large boat with a sudden jerk. Added to that evidence is the common knowledge that water will in the beginning yield and almost entirely give away before the paddle wheel of a boat, and the general observation and experience that in the beginning its movement is almost imperceptible. This is not a case where the testimony is merely not plausible, or one involving the phenomenon of electricity with its unpredictable and unaccountable action, or where there was some unlooked for or unusual result from other interacting forces. It is a case involving physical elements and scientific principles established by the laws of physics and mechanics and proven by unlimited experience always to produce the same result.

It is, to be sure, ordinarily the function of a jury to determine the weight and effectiveness of the evidence. But this acceptation of the power or prerogative of the jury is subject to the quite universal qualification that the jury may not, through sympathy or other reason, arbitrarily or capriciously base its verdict upon a statement as to what occurred or how something happened when it is opposed to the laws of nature or is clearly in conflict with the scientific principles, or base its verdict upon testimony that is so incredible and improbable and contrary to common observation and experience as to be manifestly without probative value. 20 Am. Jur., Evidence, Sections 1183; 1184; Jones, Commentaries on Evidence, Section 461; Moore on Facts, Section 149 et seq.; Annotations, 8 A. L. R. 796; 21 A. L. R. 141. We have recognized the rule in many cases and applied it in a number involving various kinds of incredible stories. See Louisville and Nashville Railroad Company v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471; Louisville Water Company v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A., 1916D, 300; Illinois Central Railroad Company v. Finch's Adm'r, 178 Ky. 229, 198 S. W. 734; Hauser v. Public Service Company of Indiana, 271

Ky. 206, 111 S. W. (2d) 657. In some of the decisions we held that the testimony was so contradictory as not to constitute a scintilla of evidence and, therefore, not to have authorized a submission of the case to the jury, and in others that the verdicts were flagrantly against the evidence requiring reversal for another trial. Under the present practice, where the latter conclusion is now reached, the former rule is to be observed, for we now hold that a mere scintilla of evidence is not sufficient to take a case to the jury.

Quite close to the foregoing rule as to contradiction of the physical laws is another which may well be applied here. It is that if the admitted physical facts, whether corroborated by testimony of those who saw the accident or not, are so contradictory of the testimony of other witnesses as to how or where an accident occurred, a verdict based upon that testimony will be deemed by this court to be flagrantly against the evidence. Cumberland Railroad Company v. Girdner, 174 Ky. 761, 192 S. W. 873; Cochran's Adm'rs v. Chesapeake and O. Railway Company, 232 Ky. 107, 22 S. W. (2d) 452; C. L. & L. Motor Express Company v. Achenbach, 259 Ky. 228, 82 S. W. (2d) 335; Louisville and N. Railroad Company v. Welsh, 272 Ky. 120, 113 S. W. (2d) 879; Louisville and N. Railroad Company v. Lefevers' Adm'x, 272 Ky. 152, 113 S. W. (2d) 1136; Lambert v. Miller's Administrator, 277 Ky. 64, 125 S. W. (2d) 1019. And in Cincinnati, N. and C. Ry. Company v. Johnson, supra, which states the rule that testimony of a plaintiff alone may be sufficient to support a verdict, although contradicted by many witnesses, we held that the testimony of a woman as to how she fell when a street car made a violent jerk was so much at variance with well recognized physical laws that a peremptory instruction for the defendant should have been given. In the instant case the testimony of the appellee and her two witnesses that the large boat started with a violent jerk and lurch is of that character. Passing over quite satisfactory testimony that the boat had not been untied, we have testimony of qualified and experienced witnesses that it was not possible for the boat to have been started in such a manner; and that is in no way and in no degree disputed.

We would not be understood as imputing perjury to the plaintiff and her witnesses. We think their testimony is based upon a theory, and that the theory is de-

stroyed by the physical facts and the unchangeable law of nature. We may close the opinion with the following extract from Spiro v. St. Louis Transit Company, 102 Mo. App. 250, 76 S. W. 684, 688, quoted in Moore on Facts, Section 154:

> "Verdicts resting on evidence which looks contrary to the ordinary course of nature are not infrequently set aside, and retrials directed by appellate courts, as a proper precaution against an unjust outcome of litigation. * * * This prerogative of courts of error is sparingly employed, but that it exists, as an emergency expedient, for the correction of verdicts palpably wrong, is certain. The appropriate use of it does not require a court to be convinced that the jury found an event to have occurred that was physically impossible or miraculous. It is enough if the event found was so improbable, according to the ordinary operation of physical forces, or was so overwhelmingly disproved by credit witnesses, as to compel the conviction that the jury either failed to weigh the evidence carefully, or drew unwarranted inferences, or yielded to a partisan bias."

The judgment is reversed.