## Southeastern Greyhound Lines v. Bingham.

Feb. 9, 1945.

C. K. Calvert and W. L. Hammond for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD—Reversing.

In describing the manner in which he sustained the alleged injuries for which in this action he recovered a verdict for $2,000, appellee testified that because of the rapid speed at which the driver of appellant's bus, in which he was a passenger, rounded a sharp curve on a

crooked road, his hold on the back of a seat which he was using as a support while standing in the aisle was loosened, and that "when I turned that loose, I felt something tear about my kidney, right there (indicating on back) and felt a keen pain catch me, it felt like it hit something and tore loose." He neither alleged nor testified to any sudden, unusual or unnecessary jerk, stop, or movement of the bus; no other person testified to such an occurrence or to any mishap which befell appellee during his journey; and, although his petition charged negligence in such terms as to, perhaps, state a cause of action, he wholly failed to prove one. Chesapeake & Ohio R. Co. v. Hay, 248 Ky. 69, 58 S. W. 2d 228; Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S. W. 2d 1107.

Appellee invokes the rule that, if practicable, a carrier is bound to furnish a seat to a passenger who has paid his fare, and dwells at length upon the vicissitudes of his journey, one of which was a dispute with the driver of the bus over the validity of his ticket which delayed his entry until all the seats had become occupied by other passengers. However, before the bus started, the right to travel on the ticket was accorded him, and he elected to travel on that bus with full knowledge that the seats were occupied and that he would be compelled to stand. Since this is not an action for a breach of the carrier's contract arising out of the issuance of the ticket, but an action to recover for alleged personal injuries sustained through the negligent operation of the bus after the contract had been honored, it is obvious that the occurrences preceding appellee's entry into the bus, however disagreeable to his sensibilities, cannot supply the deficiencies in appellee's proof heretofore pointed out.

Another fatal defect in appellee's case was his inability to deny or otherwise refute the testimony of appellant's witness, Dr. Charles B. Stacy, who had treated appellee some five months prior to the alleged injury, that at the time of such treatment appellee complained of exactly the same symptoms and manifested exactly the same disorders, the principal one of which was blood in the urine, as he claimed had resulted from his alleged injury. Appellee attempted to establish his injuries by the testimony of members of his family and friends, and by propounding hypothetical questions to a

physician who had never treated him, and by similar questions propounded to Dr. Stacy. But the testimony of the relatives and friends was, to say the least, unconvincing, and the hypothetical questions were incompetent, not only because they assumed the existence of factors not shown by the proof, but because they were so framed as to exclude from consideration all possible causes of appellee's condition other than traumatic injury. Moreover, Dr. Stacy, who examined appellee some few days before the trial at the instance of the appellant, testified that he was suffering from arthritis of the lumbar region, a greatly enlarged prostate gland, and a condition of the kidneys, all of which had existed prior to the alleged injury, and that the kidney condition had improved, since there was no blood in the urine. An X-ray examination showed that there had been no fracture of any kind, and, as far as the witness could discover, nothing in appellee's condition could be attributed to trauma.

If the testimony at an ensuing trial is the same, the Court should peremptorily instruct the jury to find a verdict for the defendant. All other questions are reserved.

Judgment reversed.

Whole Court sitting.