## DALLAS RAILWAY & TERMINAL CO. v. WINDSOR.

### No. 14876.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 31, 1947.

Rehearing Denied Dec. 5, 1947.

Burford, Ryburn, Hincks & Ford and Howard Jensen, all of Dallas, for appellant.

DeShazo & Hyde and Chaney & Davenport, all of Dallas, for appellee.

McDONALD, Chief Justice.

Appellee Windsor, as plaintiff in the court below, brought this suit to recover damages for personal injuries sustained by his wife, who was injured while riding as a passenger on a bus owned and operated by defendant in the City of Dallas. He alleges in his petition that Mrs. Windsor paid the regular fare and boarded the bus, that there were no seats available, and that she had to stand while riding on the bus. That when the bus reached a named street intersection it made a sudden stop for the purpose of picking up passengers, and that the stop was so abrupt that it threw Mrs. Windsor off balance and jerked her with such force that it jerked her loose from the seat to which she was holding, and threw her flat on her back in the aisle, causing her to sustain serious injuries. That the defendant and its operator were negligent in several particulars, such as stopping the bus suddenly, failing to keep a proper lookout for the safety of the passengers, speeding, and the like, and also that defendant was negligent in failing to provide enough seats

for its passengers, and particularly Mrs. Windsor, and in failing to provide rods for the passengers to hold to. The case was tried to a jury, who found in response to special issues that defendant failed to provide enough seats for its passengers, and particularly Mrs. Windsor, that such failure was negligence, and that such negligence was a proximate cause of Mrs. Windsor's fall. The jury returned negative answers to issues inquiring if the bus operator stopped the bus suddenly, if he failed to keep a proper lookout for Mrs. Windsor's safety, if he was driving the bus at a faster rate of speed than a very cautious and prudent person would have operated it under the same or similar circumstances, if he was driving the bus in excess of 30 miles per hour, and if defendant failed to provide sufficient rods for the passengers to hold to. In other words, the jury absolved the defendant and its operator from all acts of negligence submitted in the charge except that of failing to provide Mrs. Windsor with a seat. Negative answers were made to the issues inquiring as to contributory negligence on the part of Mrs. Windsor.

Defendant moved for judgment notwithstanding the findings of negligence on the part of defendant in failing to provide Mrs. Windsor with a seat, and, in the alternative, for judgment on the verdict. Other questions are raised in the briefs, but on account of the view we take of the case we shall consider only one question, and that is whether plaintiff was entitled to judgment on the finding that defendant was negligent in failing to provide a seat for her and that such negligence was a proximate cause of her fall.

Before we get to this question it will be mentioned that for reasons set out in an unpublished opinion we have heretofore overruled appellee's motion to dismiss the appeal, and that we still adhere to that ruling. Also, we have carefully considered questions raised by appellee pertaining to rules of briefing, and overrule the contentions made by appellee in such respect.

The effect of the jury verdict is that the bus operator was driving the bus in a careful and proper manner at the time Mrs. Windsor fell. If he was guilty of negligence in any respect other than those submitted to the jury, plaintiff has waived any recovery therefor. We are therefore limited to the question of defendant's liability for failure to provide Mrs. Windsor with a seat on the bus, when her fall was not caused by any other fault of the defendant.

 There are many reported cases dealing with injuries sustained by passengers compelled to stand for want of adequate seats on public conveyances, or by passengers who were hurt as the result of overcrowding of such conveyances. It is not possible to harmonize all the language which may be found in the opinions in those cases. We shall apply what we regard as the better rules, and which are, we think, more appropriate to the commonly known conditions of modern urban transportation. This is not what should be called a case of overcrowding of the bus. As we understand the testimony, Mrs. Windsor was the only passenger who was standing at the time she fell. She boarded the bus at about 8:40 o'clock in the morning on a week day. Although no evidence was offered concerning it, it is a matter of common knowledge that at such time of the day, and at certain other times of the day, many buses in large cities are so loaded with passengers that many of the passengers have to stand. It is a matter of common knowledge that passengers, at such peak hours of the day, crowd onto the buses, and seek transportation on them whether seats are available or not. It is doubtful, under the law, if the transportation companies could rightfully refuse to carry those who demand to be transported even though all seats on the conveyance are occupied. It is a matter of common knowledge that during and since the recent war years the public transportation companies have been able to purchase little by way of new equipment, and that overcrowded conditions on buses and other public conveyances, especially at certain hours of the day, have been the rule rather than the exception. Both the travelling public and the transportation companies have been faced with the necessity of accepting unavoidable conditions, or else resorting to other means of trans-

portation. For many passengers that is not reasonably possible. For us to hold that an urban transportation company, operating in a large city like Dallas, could accept passengers after all seats are filled, only at the risk of being held negligent for so doing and liable for any injuries suffered by a passenger who might be hurt while standing simply because he was standing rather than sitting in a seat, would be to impose an unjust burden on such companies, and, what would be of more serious consequence, might have the effect of causing many persons to be deprived of public transportation, even though willing to ride standing rather than be left without access to public transportation. We could not fairly and justly impose such a rule of liability on the public transportation companies, and at the same time say that they should continue to accept passengers after all seats are occupied. Such a rule of liability would not comport with a realistic view of conditions that actually exist and are commonly known everywhere.

█ The rule is that public carriers should provide seats for their passengers if conditions reasonably permit it, and it is also the rule that if passengers have to stand, the carrier must exercise a degree of care which is appropriate in view of the fact that some of the passengers are standing. The rule is well stated in 13 C.J.S., Carriers, § 745: "It is the carrier's duty to exercise a high degree of care to provide its passengers with seats and with a safe place to ride, so as to prevent overcrowding, particularly where it has notice in advance that an unusual number of passengers will ride on its trains; and, while it is not negligence per se to receive a passenger on a crowded car or train, and the carrier is not liable for a passenger's injuries if it exercises a proper degree of care for his safety in such cases, yet it is its duty to exercise a degree of care for the passenger's safety proportionate to the increased danger caused by the overcrowding; and if it fails so to do it is liable for injuries received by the passenger by reason of the overcrowding of the conveyance increasing the danger to him by his being compelled to stand or ride in an unsafe position, or by being put in peril while getting on or off the conveyance."

█ In the case before us, the jury verdict absolves defendant from all negligence as to the manner of operating the bus. As we view it, it was not actionable negligence merely to fail to provide Mrs. Windsor with a seat, or, to express it in the way more precisely applicable to the facts of the case, to permit her to ride on the bus after all seats were filled.

When Mrs. Windsor boarded the bus, and found that all seats were taken, she was put to the election of demanding a return of her fare and leaving the bus, or else riding in a standing position. As we have said, the degree of care required of the bus operator should be measured in view of the more exposed position of the passenger who is riding in a standing position, but it is to be presumed that the jury did that in arriving at its verdict in this case. In addition to the decisions cited in the footnote to the excerpt from 13 C.J.S., Carriers, § 745, above referred to, see those cited in annotation in 42 A.L.R. 156; and see also Tennegkeit v. Galveston Electric Co., Tex. Civ.App., 182 S.W. 72; Osteen v. Dallas Consol. Elec. St. R. Co., Tex.Civ.App., 145 S.W. 643, writ denied; Hollon v. Louisville & N. R. Co., 209 Ky. 287, 272 S.W. 740, 42 A.L.R. 155; Southeastern Greyhound Lines v. Bingham, 299 Ky. 381, 185 S.W.2d 540; Burton v. West Jersey Ferry Co., 114 U. S. 474, 5 S.Ct. 960, 29 L.Ed. 215; and 10 Am.Jur., Carriers, No. 1078, p. 86.

Our decision is not based on the idea that Mrs. Windsor was guilty of contributory negligence in staying on the bus when all seats were taken by other passengers. It is based on her election to accept the limited accommodations then available.

It appearing that the case has been fully developed, it is our order that the judgment of the trial court be reversed and that judgment be rendered here in favor of the defendant.