## Southeastern Greyhound Lines, Inc. v. Chumley.

February 3, 1950.

R. L. Maddox, Judge.

156

R. W. Keenon, Logan Patterson, James S. Wilson and Stoll, Keenon & Park for appellant.

James S. Golden and W. R. Lay for appellee.

STANLEY, COMMISSIONER—Reversing.

The judgment for $12,500 is for personal injuries sustained by a passenger on a bus.

The appellee, Mrs. Anna Mae Chumley, and her husband boarded the bus at a point several miles north of Knoxville en route to their home in Middlesboro. All the seats were occupied, and they stood in the aisle near the back. Mrs. Chumley testified that as the bus approached a flag stop, two or three miles up the road, "A boy came out all at once from a little place and threw up his hand; he had a bag in his hand, and when he threw his hand up this bus driver threw on his brakes, right quick. When he threw on the brake quick, my hand jerked loose from this little rod and threw me against the seat this way, the one I was standing by, and I caught at the back of the other seat with my hand and I pushed myself up, and when I done that, he threw the brakes on and stopped again, and when he threw the brakes on that time I wasn't holding, he jerked me backwards, just a jerk that kind of creeled me to the other seat, and I felt something jerk in my side. When I went that way I still didn't know I was hurt." When asked how the stop compared with other stops she had observed as a passenger upon other occasions, she testified, "Well, they didn't hit the brakes so hard and sudden like they did then—just like they was going to run into something and had to throw them on quick." Her husband substantially corroborated her, though his testimony is less definite. He stated the bus was travelling 60 or 65 miles an hour when it was flagged; that the driver first applied the brakes when 100 or 125 feet away; that he applied the brakes twice and suddenly stopped. The witness was holding to the seats on the side and "it gave me a jerk." The testimony of the plaintiff's witness, Goforth, was that the bus "stopped a little quicker than ordinary." On cross-examination he said, "I didn't see anything out of the ordinary, more than what would happen most any time."

The plaintiff further testified that when the bus stopped at a town about 25 miles farther on, she told the driver she had been hurt and was sick and had to have a seat. He found one for her on another bus immediately following, but her husband remained on the first one. Upon arrival at Middlesboro, she was very sick and sought a doctor. She underwent a surgical operation not long after.

On the other side of the case we have the testimony

of the driver and eight witnesses, all of whom seem to be entirely disinterested, that there was a gradual, smooth stopping of the bus, without sudden application of the brakes or any jerk or lurch. Several who were seated in the rear of the bus say the plaintiff did not fall or was not thrown against the seat, and that she made no complaint at the time. It is further shown by a number of witnesses, including a "spotter" employed by an independent company who happened to be on the bus checking the cash fares and the way in which the driver operated it, and who had simultaneously made a record of such things, that both the plaintiff and her husband and two other passengers were transferred to the second bus and not the plaintiff alone. He had observed no sudden stopping. There are other contradictions.

We are concerned first with the question whether there was sufficient evidence of negligence to take the case to the jury.

Where a passenger on a public conveyance, with full knowledge that all the seats are occupied and that he would be compelled to stand, voluntarily elects to do so, he waives any duty of the carrier to furnish him a seat. Hollon v. Louisville & N. Railroad Co., 209 Ky. 287, 272 S. W. 740, 42 A. L. R. 155; Southeastern Greyhound Lines v. Bingham, 299 Ky. 381, 185 S. W. 2d 540. This mutual arrangement increases the corresponding risks and hazards ordinarily incidental to standing.

The law in this relation is, generally, that to establish negligence prima facie, there must be proof that the movement or stopping of the vehicle was, as gauged by the ordinary operation of similar conveyances, unusual and unnecessarily sudden and of such degree of violence that the jury could conclude that it was caused by carelessness or negligence. Cincinnati, N. & C. Ry. Co. v. Johnson, 281 Ky. 565, 136 S. W. 2d 769; Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S. W. 2d 1107. Ordinary jolts and jerks of a motor bus in starting and stopping are inevitable and among the usual incidents of travel.

In our cases where motor buses were the vehicles, the passengers claiming to have been injured were seated except Southeastern Greyhound Lines v. Bingham, 299 Ky. 381, 185 S. W. 2d 540, where there was no evi-

dence of a sudden, unusual or unnecessary movement, and Dudley v. Blue Ribbon Lines Corp., 309 Ky. 308, 217 S. W. 2d 629, where the passenger claimed the bus started suddenly before she had time to be seated, and in that case the verdict was for the defendant.

Testimony that a bus was suddenly stopped or even that there was a violent lurch, and like expressions as to degree, border upon conclusions of the witness. There ought to be evidence of what appeared to take place as physical facts, or evidence capable of conveying to the ordinary or average mind a definite conception of some conduct on the part of the operator of the vehicle upon which a reasonable inference and finding of negligence could rest. Wiggins v. North Coast Transportation Co., 2 Wash. 2d 446, 98 P. 2d 675. The plaintiff and her husband did undertake to state the driver of this bus applied the brakes suddenly and that the effect was to jostle her about and throw her off balance with such force as to loosen her hold on a "little rod" and throw her against a seat. But their evidence is not very persuasive on the principal point in issue and not consistent in several particulars, while the evidence to the contrary is preponderating. Yet, it has always been the rule in this jurisdiction that a verdict will not be set aside, or, under present practice, the case be taken from the jury, merely because a preponderance of the evidence is one way or the other. Coca Cola Bottling Works of Carrollton v. Lothridge, 199 Ky. 719, 251 S. W. 956; Sandford v. Smith, 5 Bush 471, 68 Ky. 471; Scanlon-Thompson Coal Co. v. Lick Branch Coal Co., 243 Ky. 100, 47 S. W. 2d 1007.

Were the case one where the passenger had occupied a seat in the bus, we might have to say that the evidence was not sufficient to sustain the cause of action. Cincinnati N. & C. Ry. Co. v. Johnson, supra, 281 Ky. 565, 136 S. W. 2d 769. The margin of difference is close. But here the carrier accepted the passenger to stand in the aisle during the course of the transportation.

The terms in the vocabulary of the law of negligence as to duty are terms of relation. The principle of the highest degree of care does not change, but the nature of the situations or conditions subject to the principle differ. The more probable the danger, the greater the need of caution. The duty is measured by the danger

reasonably to be foreseen. That is always so. We apply the principle to the present case. The carrier having undertaken to transport the passenger in a situation in which she was more apt to get hurt than if seated, its legal duty to exercise the highest degree of care for her safety imposed upon it such concern and precaution as were commensurate with her more risky place in the bus. It was its duty in operating and stopping its bus to recognize her position and to exercise the degree of caution that was appropriate and proportionate to the risk of injury which her position entailed. 10 Am. Jur., Carriers, Secs. 1270, 1271. But for the courts to hold that a common carrier could accept a passenger after all seats are filled when he was willing to stand rather than not be carried at all, and then be liable for jerks and jolts incident to normal and ordinary operation would be to impose too strict a rule of liability and an unjust burden. It would not comport with a realistic view of conditions actually existing and met up with everywhere and everyday. Here, however, was some evidence of more than mere ordinary and normal stopping. Considering that in relation to the legal requirement of greater caution because the passenger was standing, we conclude the case was one for the jury.

On the other hand, though the passenger may rely upon the carrier to exercise the greater care that is commensurate with the increased peril arising from the position in which it permitted him to place himself, the carrier at the same time may assume that he will exercise the prudence and care for his own safety under the ordinary and usual exigencies attendant upon the circumstances. 10 Am. Jur., Carriers, Secs. 1252, 1493, 1532. The plaintiff having voluntarily chosen to stand in the aisle, and thereby to take a position that would subject her to less security from jerks and jolts, assumed the risk of those things which were attendant upon the operation of the bus in the normal and usual way and the consequences of its ordinary movements. It was incumbent upon her in the exercise of ordinary care for her own safety to take greater precaution than if she had been seated in the bus. Her voluntary position of greater peril (always relatively little) imposed upon her a proportionately greater degree of caution or care with respect to the effect of the sudden stopping of the bus which was reasonably to be anticipated as incident

to its prudent operation, though she did not assume any extraordinary or any unusual action that may have been caused by the negligence of the bus company. 10 Am Jur., Carriers, Secs. 1252, 1502, 1504.

The foregoing consideration of the corresponding increase in precaution to be exercised by the bus company and by the passenger leads to the view that the fact the passenger was standing in the bus should be regarded as but an incident or circumstance, and that the reciprocal duties should have been submitted to the jury in substantially the same form and manner as if she had been occupying a seat.

The court gave all the instructions offered by the plaintiff and refused all offered by the defendant. The instructions given were erroneous, very erroneous. The first recited that if the jury believed from the evidence that the plaintiff had boarded the bus when the driver knew, or by the exercise of ordinary care could have known, that all the seats were occupied and that it would be necessary for her to stand until a seat was available, and under such circumstances had accepted her as a passenger and she had paid the usual fare to her destination, then it became the duty of the defendant to exercise the highest degree of care which prudent persons engaged in like business usually exercise to carry her safely to her destination, and the failure of the defendant's driver to exercise that care was negligence. No statement was made as to the defendant's liability in case it had violated that duty. The second instruction was, in substance, that if while the plaintiff was standing in the bus and exercising ordinary care for her own safety, the bus driver "negligently caused the bus to make an unusual, unnecessary and sudden jerk, with such force as that plaintiff was violently thrown against the seats or other parts of the bus and was thereby injured as a direct and proximate result thereof then the law is for the plaintiff and you should so find. Unless you so believe your verdict should be for the defendant.'' The third instruction submitted the measures of damage and defined ordinary care and highest degree of care.

It was not disputed that the plaintiff was a passenger who had paid her fare and had been accepted for transportation with the knowledge of both parties that

she would have to stand in the aisle. The instructions should have been so premised, for where certain facts are conceded or are undisputed, the court may so treat them in instructing the jury. The first instruction, greatly abridged above, violated the rule against giving undue emphasis and prominence to particular facts, which practice tends to minimize or obscure other evidence bearing on the main issue. See Compton v. Smith, 286 Ky. 179, 150 S. W. 2d 657; Stanley's Instructions to Juries, sec. 28. It contained too much brushwood, which obscured the points at issue. Those points were the defendant's negligence in the operation of the bus and the plaintiff's contributory negligence under those circumstances.

The language of the second instruction did not clearly advise the jury that the stopping of the bus must have been not only unnecessary and unusual but also of sufficient violence to cause injury to a passenger exercising ordinary care for her own safety. See Louisville Ry. Co. v. Osborne, 157 Ky. 341, 163 S. W. 189; Louisville & Interurban Ry. Co. v. Roberts, 190 Ky. 744, 228 S. W. 681; Lyons v. Southeastern Greyhound Lines, supra, 282 Ky. 106, 137 S. W. 2d 1107.

No converse or contributory negligence instruction was given.

The instructions offered by the defendant were not correct, but they were enough to place the duty upon the court to give proper instructions on the points suggested. A provision in the tendered instruction that if the plaintiff boarded the bus knowing that she would have to stand in the aisle, she thereby assumed the ordinary and usual risk of such a position and must have exercised reasonable care for her own safety as the circumstances would suggest to an ordinary prudent person, clearly stated the abstract law. But this too contains the vice we find in the first instruction.

It seems to us, as already stated, that the greater care imposed upon each party under the circumstances would be embraced in the usual forms of instructions defining their reciprocal legal duties, the one to the other, without mentioning the particular situation of the passenger. We regarded such form as sufficient and approved it in Chesapeake & O. Railway Co. v. Hay, 261 Ky. 566, 88 S. W. 2d 318, published as sec. 249, Instruc-

tions to Juries, Stanley. The instructions in this case might well have been patterned after them. There was no independent act and responsibility as was presented in Fields v. Cannon Ball Cab & Bus Co., 233 Ky. 383, 25 S. W. 2d 1046 (See Sec. 250, Stanley's Instructions to Juries), calling for special reference. Upon another trial, it seems to us, the contributory negligence instruction may well follow the form prepared by this court, in Illinois Cent. R. Co. v. Dallas' Adm'x, 150 Ky. 442, 150 S. W. 536, published as Paragraph 4 of Sec. 247, Stanley's Instructions to Juries.

The evidence is very unsatisfactory towards proving that the subsequent serious surgical operation and the resulting nervous condition of the plaintiff constituting permanent injury, were the proximate result of her experiences on this occasion. However, we reserve the question whether it was enough to authorize the instruction allowing damages for permanent injury. We do not think the evidence as to time lost by the plaintiff was sufficient to have submitted that item of damage.

The judgment is reversed.