## LOUISVILLE RY. CO. v. ALLEN.

Court of Appeals of Kentucky.

Dec. 21, 1951.

Rehearing Denied March 14, 1952.

Bullitt, Dawson & Tarrant, Earl S. Wilson and Gerald Kirven, all of Louisville, for appellant.

Julius Leibson, Louisville, for appellee.

CAMMACK, Chief Justice.

Emma Allen instituted this action against the Louisville Railway Company to recover for personal injuries allegedly sustained by her through the negligent operation of one of the Railway Company's busses. The trial court gave a peremptory instruction in favor of Emma Allen at the conclusion of all the evidence. The jury awarded damages in the amount of $4,173. The Railway Company is appealing from a judgment in that amount.

As grounds for reversal, the appellant contends that (1) the trial court should have directed a verdict for and not against it, because there was no proof of negligence on the part of the bus operator and because the appellee was contributorily negligent as a matter of law; (2) if it was not entitled to a peremptory instruction, the issues of negligence and contributory neg-

ligence should have been submitted to the jury; (3) incompetent evidence was admitted over its objection; and (4) the verdict is excessive.

According to the testimony of the appellee, she, accompanied by her niece, one year and ten months old, and her nephew, two years and ten months old, was a passenger on a westbound Oak Street bus of the appellant on the morning of May 9, 1949. On a signal from one of the passengers, the bus stopped at the corner of Thirty-fourth Street and Greenwood Avenue. The appellee, with the children, went to the rear door, intending to alight from the bus. (This exit door is commonly referred to as the rear door, whereas its location is actually about three-fourths of the way back on the right side of the bus.) Several passengers preceded the appellee through the door. After instructing her nephew to stand on the floor of the bus, the appellee carried her niece off the bus and placed her on the curb. The appellee then placed one foot on the bottom step of this exit way and reached back through the doors to help her nephew alight. She "got hold of his arm" as he started down the steps, whereupon the folding doors closed on her arm and the bus started forward, dragging her a short distance along the street and causing various injuries to her arm, shoulder and other parts of her body.

Clarence Roos, the bus operator, testified that he opened both doors at the bus stop to allow a passenger to board the bus by the front door and some passengers to get off at the rear door. He then looked into the rear view mirror and "noticed that both doors were clear." He also looked for but did not "notice" any passengers preparing to alight at the rear door, nor did he see the boy standing inside the bus near the door, though he had seen the appellee take a child off the bus. After looking back (via the mirror system, by which the driver is able to see the exit door and steps) to see if the doors were clear, he turned his head to the left and pulled the lever by which the doors are operated, but did not start the bus forward. While pulling the lever with his head turned, he was unable to see what was "going on" behind him in the bus. He stated that he had not seen the woman's arm through the doorway when he closed the doors and that the first he knew of the accident was when "someone hollered" and a woman came to the front of the bus, claiming her arm had been caught in the doors.

The testimony of disinterested witnesses clearly establishes that the boy was standing in the aisle at or near the head of the exit steps, notwithstanding the testimony of the bus operator that he "didn't notice" him standing there. We think the evidence also establishes that the appellee's arm was in the doorway at the instant the doors were closed. But it does not follow necessarily that these factors entitled the appellee to a directed verdict. The duty owed to a passenger by a common carrier is "to exercise the highest degree of care, skill and diligence for the safety of the passenger as is required by the nature and risk of the undertaking, in view of the mode of conveyance and other circumstances involved, which may vary according to the immediate activity, instrumentality, time or place." Southeastern Greyhound Lines v. Woods, 298 Ky. 773, 184 S.W.2d 93, 95. The highest degree of care is that degree of care which prudent and skillful persons engaged in the same business usually observe under similar circumstances. Ken-Ten Coach Lines, Inc. v. Siler, 303 Ky. 263, 197 S.W.2d 406.

The appellant contends that the appellee, when injured, was no longer a passenger and hence the appellant owed a duty to exercise only ordinary care for her safety; that is, the same duty it owes to any other pedestrian. The rule in many jurisdictions is that under ordinary circumstances the passenger-carrier relationship terminates when the alighting passenger gains a secure and maintainable foothold upon the street. 10 Am.Jur., Carriers, Sec. 1008, p. 54. In Kentucky it has been held that the relationship ends when the passenger has alighted in a place of safety, Trout's Adm'r v. Ohio Valley Electric Ry. Co., 241 Ky. 144, 43 S.W.2d 507; or has had a reasonable opportunity to reach a place of safety, Louisville

Ry. Co. v. Kennedy, 162 Ky. 560, 172 S.W. 970.

However, we are of the opinion that these statements of the law are not applicable here, even though the appellee had safely alighted, because there remained on the bus a small child who at the time was in appellee's care and custody and who required her assistance in leaving the bus. In view of the facts peculiar to this case the appellee, while engaged in her effort to assist the boy from the bus, retained her status as a passenger. During this time the carrier owed her as a passenger the aforementioned duty of exercising the highest degree of care for her safety.

Obviously the test of foreseeability must be applied in determining whether the carrier has breached its duty. In Howard v. Fowler, 306 Ky. 567, 207 S.W.2d 559, 561, we wrote: "Regardless of the degree of care which was required of appellant's driver, a breach of duty can only be found in a failure to exercise proper diligence *under the circumstances*. While he may be bound to apprehend danger, his duty is limited to the *natural and probable*. He is not bound to anticipate nor take precautions against the unforeseeable in the normal course of events."

In Southeastern Greyhound Lines v. Chumley, 312 Ky. 154, 226 S.W.2d 777, 780, we wrote: "The principle of the highest degree of care does not change, but the nature of the situations or conditions subject to the principle differ. The more probable the danger, the greater the need of caution. The duty is measured by the danger reasonably to be foreseen."

The only factor appearing in the record which would serve to call the operator's attention to the appellee's intended re-entrance into the bus through the exit door was the presence of a small boy standing in the aisle near the exit door. We are then faced with the question of whether the action of the appellee in attempting to re-enter the bus was "natural and probable" under the circumstances, and hence whether the operator should have foreseen, without prior warning from the appellee, that she would partially re-enter the doorway for the purpose of assisting the boy from the bus. In view of the facts in this case, to place such a duty upon the operator as a matter of law would impose upon the appellant a burden greater than that embraced within the meaning of "highest degree of care under the circumstances." We have concluded that the issue of the bus operator's negligence should have been submitted to the jury under proper instructions as to the carrier's duty, and hence neither party was entitled to a peremptory instruction.

This case may be distinguished from the cases in which we held a carrier liable for moving a vehicle forward while a passenger was alighting therefrom, regardless of how carefully the movement was made. Chesapeake & O. Ry. Co. v. Smith, 259 Ky. 821, 83 S.W.2d 488; Stover v. Cincinnati, N. & C. Ry. Co., 252 Ky. 425, 67 S.W.2d 484, and cases cited therein. In those cases, the person injured was actually in the act of alighting when the vehicle was moved, and therefore the danger to the passenger should reasonably have been foreseen.

The appellee, as a passenger, was not entitled to rely exclusively upon the carrier for her safety. While in the act of alighting, she was under a duty to exercise reasonable care to avoid injury to her person. Louisville & N. R. Co. v. Harrington, 261 Ky. 212, 87 S.W.2d 379; Lexington Ry. Co. v. Lowe, 143 Ky. 339, 136 S.W. 618. This same duty devolved upon her in her attempt to help her nephew from the bus. In the case now before us the minds of reasonable men could easily differ on the question of whether the appellee was exercising ordinary care, i. e., that care which an ordinary prudent man would exercise for his own safety and security under the same circumstances. The issue of contributory negligence should have been submitted to the jury.

We have reviewed the evidence asserted by the appellant to be incompetent in order that these points will not arise in the event of another trial. Minnie Allen, a sister of the appellee, was permitted to testify over the appellant's objection that the ap-

pellee had, during the time she was allegedly bedridden by the injuries received from this accident, "suffered a great deal, a whole lot. She was hurt bad." Because the witness had attended and cared for the appellee during this period, this testimony was competent and properly admitted. Zogg v. O'Bryan, Ky., 237 S.W.2d 511. She was also permitted to testify that the appellee was still unable, at the time of the trial, to work around the home and is "not able to do anything." Further, in answer to the question, "What is the matter with her now?" she stated, "Her arm still pains and she can't lift anything heavy, and she can't stoop and bend and do anything like that * * *." We have written often that a lay witness may generally testify concerning the apparent vigor, strength or physical condition of another, and as to the presence or absence in such persons of symptoms indicating forms of disease so common and well understood as to be within the knowledge of a layman. The testimony must be confined to facts within his knowledge. The layman is not allowed to testify as an expert or to give opinions on such matters. Equitable Life Assurance Society of U. S. v. Green, 259 Ky. 773, 83 S.W.2d 478, and cases cited therein. Whether or not the appellee's arm pained her at the time of the trial was not a fact within the witness' knowledge. This would be a condition about which only an expert witness or the appellee could testify.

Also it has been held many times that the opinion testimony of a lay witness as to the ability of another to work is incompetent. Equitable Life Assurance Society of U. S. v. Green, supra; Aetna Life Insurance Co. of Hartford, Conn. v. Prater's Adm'x, 259 Ky. 665, 83 S.W.2d 17, and cases therein cited. Because the witness testified not as to facts within her knowledge, but only as to her conclusions or opinions, the testimony regarding the ability of the appellee to work and her physical condition was incompetent and should have been excluded under the above rules.

Judgment reversed with directions to set it aside and for proceedings consistent with this opinion.